No. 3005.

J. Q. PACKARD *v.* OBER, ATWATER & CO. J. Q. PACKARD *v.* OBER, ATWATER & CO., GARRARD & CRAIG, and JOHN P. MOORE. (Consolidated.)

Compromises have no immunity from decrees of nullity, where errors of fact bearing upon the principal cause of the compromise and coupled with fraud, are shown to exist, and in such cases, said compromises must be declared null and void.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley, J. A. N. & W. F. Ogden,* for plaintiff and appellee. *R. & H. Marr, Wm. H. Hunt, Semmes & Mott,* for defendants and appellants.

WYLY, J. In February, 1868, Ober, Atwater & Co., sued the firm of Packard & Co.; composed of John Q. Packard and James B. Packard, in the Fifth District court, parish of Orleans, for $17,896 66, for balance of account due them as factors. In answer to this suit the plaintiff John Q. Packard, pleaded a general denial; alleged that he and J. B. Packard were ordinary partners engaged in cultivating plantations in the parishes of Concordia and Tensas; denied that they were in any sense commercial partners, and alleged "That on the eighteenth of May, 1867, this defendant and the said J. B. Packard as ordinary copartners, were jointly indebted to the plaintiffs for advances of money and supplies to carry on the business of planting, amounting to the sum of $18,303 49, and no more; that, on or about the twenty-fifth of May, 1867, the said indebtedness was fully paid and extinguished in the following manner, to wit: The plaintiffs purchased of defendants the "Live Oak" plantation, situated in the parish of Concordia, and on the last named day, defendants duly conveyed said plantation to the plaintiffs by public act passed before the recorder of Concordia parish and duly accepted by plaintiffs for and in consideration of the sum of $10,000, which sum was to be applied in part payment of said balance $18,303 49, and the balance, to wit: the sum of $8303 49, was settled and paid by the individual note of said J. B. Packard, made and delivered to the said Ober, Atwater & Co., on or about the twenty-fifth of May, 1867, which note has since been fully paid to the plaintiffs by the said J. B. Packard." * * * He further alleged that since said date the said Ober, Atwater & Co., have made other advances of supplies and money for planting purposes, the precise amount of which he is unable to state, but for a less amount than is claimed by plaintiffs. in their petition, and that all the advances so made have been fully paid by large sums received by them from California for him (the exact amount he is not able to state because they have not rendered him an account) and by the receipt of eighty-six bales of cotton from him, the product of the crop of 1867, the proceeds of the sale thereof still re-

maining in the hands of said Ober, Atwater & Co., and unaccounted for, but this defendant is informed and believes they amount to the sum of $6500, and also by the receipt of the proceeds of 3000 sacks of seed from the plantation in the parish of Tensas, and that when the defendants are duly and properly credited with the money received from California and the proceeds of said consignments, he alleges that the demands of the plaintiffs against him will be found to be fully canceled and paid.

These are the averments of the answer which was filed on the tenth of March, 1868. On the twenty-fourth of September, 1868, Ober, Atwater & Co., filed a supplemental petition, showing that since filing the original petition, the indebtedness of the defendants, Packard & Co., to them had been reduced to $16,570 45, and they prayed for and obtained a writ of attachment on the ground that, John Q. Packard was about leaving the State permanently. Under this writ the sheriff seized all the products and movables of John Q. Packard on the Viamede plantation in the parish of Tensas.

On the twenty-seventh of November, 1868, John Q. Packard compromised this suit with Ober, Atwater & Co., fixing the amount of his indebtedness to them at $12,000 by mutual consent; "and all demands of the one against the other are hereby merged and included in said sum of $12,000."

It was further agreed that all the property attached should be delivered to Ober, Atwater & Co., at the appraised value thereof at the time the attachment was levied, except 1000 bushels of corn reserved to pay the rent due by Packard for the Viamede plantation; the cotton gathered and to be gathered, was to be shipped to Ober, Atwater & Co., and sold, and the broom corn was likewise to be sent to market and sold. Out of the estimated value of the property and the proceeds of the crops to be shipped to market and sold, Ober, Atwater & Co., were to pay certain privilege claims and the wages and rations of the laborers and overseer on said plantation—the expense of saving the crop and the costs of suit. The costs of attachment and of keeping the property while in the custody of the sheriff and the fee of Packard's attorney were also to be paid by Ober, Atwater & Co.

The residue of the property and proceeds, after paying the specified claims, was to be applied to the payment of the $12,000 due by Packard to Ober, Atwater & Co. If any surplus remained it was to be paid over to Packard ; and if there was a deficit, Packard authorized his attorney to confess judgment for the amount thereof, with eight per cent. interest and with a stay of execution for twelve months.

In February, 1869, the plaintiff John Q. Packard, brought this suit to annul the compromise of the twenty-seventh of November, 1868, and

to recover from the defendants Ober, Atwater & Co., the sum $25,000, the value of his property on the Viamede plantation, obtained by them in virtue of said compromise. He also sued Ober, Atwater & Co., and the sureties on the attachment bond for $25,000 damages for illegally attaching his said property.

These two suits are consolidated, and the judgments adverse to the defendants rendered therein by the court *a qua*, are now submitted for revision to this court. We will first examine the suit to annul the compromise and to recover the value of the property received by Ober, Atwater & Co., in virtue thereof.

The plaintiff alleges that said settlement or compromise " was made in error and under a mistake of facts on his part—and through fraudulent practices on the part of the defendants in this, that believing the defendants to be honest men, and not being familiar with matters of account, he believed the sum sued for by them to be the true sum for which he was liable, less such payments as had been made, but since said settlement he has learned that the defendants have overcharged him by way of usurious interest, illegal and exorbitant commissions, and by errors in footings and double entries, in the full amount of six thousand dollars." He also alleges that he was entitled to certain credits besides those appearing in the account of Ober, Atwater & Co. " And petitioner further says, that before said settlement he was led to believe, and believes, through statements made by defendants and testimony which petitioner then believed, that the said deed made by him of the Live Oak plantation to defendant, Albert G. Ober, for the benefit of said firm of Ober, Atwater & Co., had not been accepted by John Janney, the duly authorized agent of the defendants, a fact which the petitioner could not know, for the reason that the acceptance, if made at all, was made in his absence, and laboring under said belief he made said settlement without taking into account the payment of the ten thousand dollars to be credited for the conveyance of said Live Oak plantation; and since said settlement petitioner has learned that said deed was duly accepted by the said agent, John Janney, and the same is binding upon the defendant, and for the conveyance of said Live Oak plantation he should be credited on the account exhibited against him in said suit in the full sum of ten thousand dollars. That if all said errors are corrected in said account and all his payments therein are duly credited he believes, and therefore avers the fact to be, that at the time of said settlement he was not and is not now indebted to the defendants to any extent whatever." That in consequence of said settlement, " made in error and induced through the deception and the fraudulent practices of the defendants," they have obtained his property, worth $25,000.

The prayer of the petition is that said settlement be. declared a nullity and set aside, and that petitioner have judgment against the defendants for said sum.

The allegation that the defendants charged usurious interest and commissions, is no ground to annul the compromise; because the accounts containing them had been rendered to him before the compromise, and he did not act in error on that account. The errors complained of in the footings and double entry, and also the allegation that the defendant is entitled to certain credits besides those appearing in the account of Ober, Atwater & Co., are not established by the proof in the record. Besides the plea of payment filed in the suit on the tenth March, 1868, admitted the correctness of the said account. The sole ground, then, for annulling the compromise is the alleged error as to the acceptance of the deed of the Live Oak plantation by Janney, the agent of the defendants.

The plaintiff contends that it was an actual giving in payment to Ober, Atwater & Co., though in the form of a sale, for ten thousand dollars cash to Albert G. Ober. The defendants, however, contend that it was intended merely as collateral security for the debt of $18,303 49, due by plaintiff to them.

The error which plaintiff insists vitiates the compromise, is that he was led by the statements of the defendants to believe that Janney, their agent, had not accepted the deed at the time of the compromise. It appears that in May, 1867, the plaintiff made a written agreement with Albert G. Ober to sell him the Live Oak plantation, in the parish of Concordia, for ten thousand dollars cash, the vendor retaining possession till first January following, and reserving the right to redeem it by returning the purchase price; the vendee was not to bind himself to pay any of the existing mortgages on the property.

On the twenty-second May, 1867, John Q. Packard and J. B. Packard appeared before the recorder of the parish of Concordia to pass the deed pursuant to agreement. Albert G. Ober wrote to John Janney, advising him of the proposed contract and asking him to accept the act in his behalf. When the notary came to draw the deed he inserted a clause binding Ober to pay a special mortgage of $7500 existing on the property, believing it was necessary to do so in order to make a valid act. The Packards being in a hurry signed the act and left. Janney was not present. When he came to examine the instrument he refused to accept it, because it was not drawn according to the agreement of the parties. In July, 1867, Albert G. Ober wrote to Janney, telling him that he did right in not accepting the deed, because it was not drawn according to instructions, but advising him now to accept it, and to let the error stand. till corrected by the Packards hereafter.

Under this instruction the deed was accepted by Janney, although he seems to have entirely forgotten it and also the receipt of the letter of July, 1867. About the time of the compromise he told Ober he had not accepted it; Ober told Sheldon, the attorney of Packard; and a few days afterwards Janney, Ober, Sheldon and Packard happen to meet on a steamboat, and Janney told them he had not signed the act. Even at the trial Janney swears he could not recollect having signed the deed, or the receipt of the letter of July, 1867, but his genuine signature was affixed to the instrument and the letter was attached thereto showing his authority to accept. It is very certain that Janney was honestly mistaken, for he could have had no motive in misinforming the parties. Ober swears he believed the statement of Janney to be true at the time the compromise was made; he informed Sheldon thereof, but had no communication whatever on the subject with Packard. The compromise was suggested by the attorneys while taking testimony in the case.

Sheldon, the attorney of Packard, swears: "That the settlement was made in the belief, on my part, that the facts as to the deed were very doubtful at least, if not decidedly against Mr. Packard; and I never had an intimation that the amount sued for by Ober, Atwater & Co. was otherwise than correct, and I am confident that Mr. Packard believed that they rendered to him accurate accounts, until some time after the settlement, although he has never been convinced that Mr. Janney did not sign the deed, and upon this point I think he yielded to my judgment, and I was decidedly of the opinion that if he could get a deduction of half the amount expressed in the deed, or nearly so, it would be best for him; and I believe, from present recollection, that nearly that sum was deducted."

So it appears from the testimony of his legal adviser that Packard has never been convinced that Mr. Janney did not sign the deed, but yielded on this point to the judgment of his attorney, who was of the opinion that if he could get a deduction of nearly half the amount expressed in the deed it would be best, and nearly that sum was deducted in the compromise. But why should Packard be in ignorance as to the acceptance of the deed, an authentic act which had been standing for a year and five months recorded in the parish of Concordia, an adjoining parish to his residence? Besides, as a defense to the suit, eight months before the compromise he specially pleaded that he had conveyed in part settlement of the demand the Live Oak plantation, and that the deed was "duly accepted." Is it to be supposed that a party who is sued for $17,896 66, and who has discharged $10,000 thereof by the giving in payment of a plantation, will remain in ignorance of the consummation of the deed for eight months after he

sets up this defense, when he knows that the desired information stands upon the public records of an adjoining parish and an authenticated copy of the deed can be had at a small expense and with a little delay? How could there be any difficulty or doubt about the acceptance of the deed. The act was authentic, and of course Janney had to sign it in the presence of the recorder and two witnesses.

We are of the opinion that if Packard made the compromise in error of fact in respect to the acceptance of the deed, he was in no manner misled by the defendants; and it was because he failed to use reasonable diligence to get the information where he knew it could undoubtedly be found with little delay and at trifling expense. This was the most important defense to the suit which he had eight months before pleaded, and no prudent man would abandon it in the compromise if he thought it a good defense without making some exertion to procure evidence of the fact, during the period of that eight months. Besides, if the plaintiff had seen fit he could have protected himself by inserting in the act of compromise a clause that it was made upon the condition that the deed or act of giving in payment had not been consummated by acceptance.

It does not appear that Albert G. Ober has ever obtained possession of the Live Oak plantation; on the contrary, we find in the record a notarial act in which, in a few weeks after the compromise, he renounces and disclaims any title whatever to said plantation and abandons the same to John Q. Packard and James B. Packard.

The compromise which the plaintiff seeks to annul was made by mutual consent of himself and the defendants for the purpose of putting an end to the law suit between them, and he preferred it to the hope of gaining, balanced by the danger of losing; it has a force equal to the authority of the thing adjudged. Revised Code, articles 3070, 3078. It ought not to be annulled for the reasons set up by the plaintiff.

Entertaining this view of the subject, it becomes unnecessary to examine the other questions presented in the case.

As the compromise can not be annulled, the suit upon the attachment bond must be rejected because it is one of the issues settled in the compromise.

It is therefore ordered that each of the judgments in these consolidated cases be annulled and reversed, and that there be judgment in both suits for the defendants with costs. It is further ordered that the reconventional demand be rejected as of nonsuit, and the right be reserved to each of the litigants in a separate suit to demand the inforcement of the reciprocal obligations of the compromise.

## ON REHEARING.

TALIAFERRO, J.   The main question in this case is as to the legal
and binding force of the compromise entered into between the parties
on the twenty-seventh of November, 1868.   The facts upon which
Packard, the plaintiff, bases his right to claim an annulment of the
compromise appear to be these:   That in the spring of 1867 a settle-
ment of accounts took place between the parties and the indebtedness
of the plaintiff fixed at $18,313 49 ; that in payment and liquidation
of this sum he sold to the defendants the Live Oak plantation in the
parish of Concordia for $10,000, and for the remainder, $8303 49, he
executed his promissory note; that the deed of conveyance he signed
in Vidalia before the recorder of the parish of Concordia on the
twenty-seventh of May, 1867; that defendants authorized John Janney
to accept the act and sign it for them, which he subsequently did but
not at the time the plaintiff signed it; that on the twenty-ninth of
February, 1868, he was sued by Ober, Atwater & Co. for the sum of
$17,896 60.

In defense of this suit Packard set up payment by sale of the Live
Oak plantation and the note for $8303 49, executed by him at the
settlement in May, 1867.   In September following, the defendants took
out a writ of attachment and seized the crop of the plaintiff on the
Viamede plantation in the parish of Tensas, together with a number
of mules, farming utensils, etc.   This attachment was sued out upon
an affidavit that the plaintiff was about to depart permanently from
the State.   A motion was made to set aside the attachment, and pend-
ing this motion the plaintiff's counsel was informed by one of the
defendants that Janney had not signed the deed for the Live Oak
plantation, and in a few days afterward the plaintiff's counsel saw
Janney himself and he informed the counsel that he had never signed
the act.   During the progress of the trial suggestions took place be-
tween the counsel of the parties that a compromise had better be made.
The plaintiff's counsel informed him of the statements that had been
made in relation to the signing of the deed by Janney, and he sug-
gested under that state of affairs that Packard had better agree to a
settlement.   This at first he declined, but afterward he acceded to the
proposition, and the compromise was entered into.   Packard now
asseverates that he was induced to enter into this compromise solely
under the belief that the deed had not been accepted, and the contract
of sale of the Live Oak plantation not consummated, and that his sup-
posed payment of $10,000 of his indebtedness to Ober, Atwater & Co.
was a failure.   We imagine that compromises have no immunity from
decrees of nullity where error of fact, bearing upon the principal

cause of the compromise, and coupled with fraud, are shown to exist. Here the error of fact alleged is, that Packard believed when he entered into the compromise that Janney had not signed the act of sale when the truth was that he had signed it; that this belief had been brought about by the defendants; and supposing he would be unable to maintain his payment of $10,000 of his debt to the defendants by the transfer to them of the Live Oak plantation, he acceded to the compromise. To determine the plaintiff's right to be relieved from the effect of this compromise we must look closely to the facts as we find them in the record.

On the part of the defendants it was sought to be shown that the deed to the Live Oak plantation was in reality only intended to operate as collateral security or as a mortgage to secure the payment of the debt owing to the defendants by plaintiff. But the instrument must speak for itself. It seems clearly to be a sale with right of redemption. In drawing up the act, the notary introduced of his own motion a clause by which the purchaser was held bound to pay an outstanding mortgage debt against the plantation of about $7000. Janney, it seems, who was the agent or attorney in fact of Ober, Atwater & Co. authorized to accept and sign the act for them refused to accept it, as it contained this stipulation not agreed to by his principals. We find in the record an act called "a rescission," purporting to be explanatory of the deed of sale of the plantation as to the stipulation we have mentioned as having been introduced by the notary and ignoring the same, and further declaring the intention of the parties to rescind the entire act and binding Packard to execute a mortgage on the Live Oak plantation to secure his indebtedness to defendants. This explanatory act, it seems, was never consummated. As shown by the record, it was not signed by any of the parties. We understand that, after this time and with full knowledge on the part of Ober, Atwater & Co. of the contents of the deed of the Live Oak plantation, they authorized Janney to sign the act, trusting to some other arrangement by which to be held harmless against the stipulation to pay the outstanding mortgage note against the property. A singular state of doubt and uncertainty amounting almost to perplexity arose in regard to whether or not Janney, as the agent of the defendants, ever signed the deed in question. Janney had declared that he had no recollection whatever of having ever signed it, and, in broader terms perhaps, that he had not.

The counsel for the plaintiff states that pending the proceedings relating to the attachment, Ober came to his office and told him he had investigated the question, and had employed experts to examine the original deed and compare Mr. Janney's real signature with that to the deed, and they had pronounced the signature not genuine, and that

Mr. Janney denied that he ever signed the deed at all. The counsel further stated in his testimony that, in a day or two after, he saw Janney and asked him about it, and that Janney told him that he had never signed the deed, and would so swear. These statements of Ober and Janney were communicated to Packard, and used by his counsel to induce him to enter into the compromise. From the drift of the evidence bearing upon the views and motives of the parties in regard to this act of compromise, we think it shows that it was willingly and even with avidity sought for on the part of the defendants, while on the part of the plaintiff it was at first rejected and afterwards agreed to with some degree of reluctance, and finally gone into solely on the advice of his counsel, who seems to have been satisfied that the deed of sale had not been consummated.

It would be well now to look at the situation of things and the attitude of the parties at the time they entered into this compromise act. In regard to the signing of the deed by Janney, the truth is that it was signed by him; for, several months after he signed it, he went to Vidalia and examined the deed, and he states in his evidence that the signature was his and that he had signed it. It is clear, we think, that when he agreed to the compromise, Packard was in ignorance of the fact that Janney had signed the deed, but believed that he had not. It is in proof that during the year 1868, Packard was cultivating a fine plantation in the parish of Tensas, which he had leased that year at a moderate price; that he was to pay in corn to be raised on the place; that he had a large crop growing upon the place—about three hundred acres in cotton, and, besides, one hundred and twenty acres in broom corn and one hundred and eighty acres in corn; that the season was propitious and that his crop bade fair to yield abundantly; that it was considered the finest crop that year in the neighborhood. His prospects were fair and flattering. The prices that season were inviting, and he was justified in anticipating large profits from his labor and industry. With the means he had a right, under these circumstances, to expect from the proceeds of his crops, what he thought to be his indebtedness to Ober, Atwater & Co. might readily have been paid off. He rested satisfied with the state in which he believed his indebtedness to them existed, namely: that he had paid them $10,000 by the sale of the Live Oak plantation, leaving a balance of something less than that sum due them by note. It would seem, then, that he had no interest in entering into the compromise.

On the other hand, Ober, Atwater & Co., without sufficient prudence, if not unjustifiably, took out an attachment, and caused his entire crop, work animals, agricultural implements, and all his appliances for carrying on a prosperous and promising business to be

seized and taken out of his possession and control, and subjected to the management of the sheriff and such keepers as he might appoint. The ruinous and disastrous consequences resulting to Packard from this act is abundantly shown by the evidence. A general demoralization at once took place among the laborers on the plantation. They became alarmed for fear of losing their wages, and refused to continue their labor. Two weeks intervened, during which, in the height of the cotton picking season, nothing was done towards gathering the crops. Laborers could only be induced to return upon assurances of higher wages promptly paid. It is shown that cotton in the seed stored in outhouses was stolen; that a system of pillaging took place, intruders from the adjoining plantations going on the place and picking and carrying off cotton; that a large quantity of the broom corn was damaged from lying on the ground after being cut and not attended to; that other portions of it were awkwardly handled and packed, and turned out to be of little or no value.

There is not within the large scope of the testimony in this record anything to sustain the opinion that there was any intention on the part of John Q. Packard to remove from the State. On the contrary, the evidence shows that he was an ardent cultivator of cotton and wedded to the business of planting, and that his declarations were frequent that he had identified himself with the State and meant to remain in it. And his acts sustained these declarations. It is shown that the defendants proceeded solely on the statements made to them by a brother and a nephew of the plaintiff, to the effect that John Q. Packard was about to leave the State. These statements, it is safe to believe, were utterly without foundation, and proceeded from revengeful and vindictive feelings entertained by the brother of J. Q. Packard towards him. A short time before the attachment was taken out, this brother was heard to express feelings of this kind toward J. Q. Packard, and to threaten revenge. The record abounds with testimony which gives to this brother a very unenviable reputation for truth, sobriety and brotherly affection. A man having the proper regard for the proprieties of life would remain silent with regard to a brother's wrong-doing, rather than blazon it forth to the world gratuitously; and the man who, uncalled for, appears to accuse his brother in order to injure him in the estimation of others, should be entitled to but little credit. The defendants, without knowledge other than that derived from the source from whence it came, should have hesitated before resorting to the harsh remedy they adopted.

When the question of the legality of the attachment came up before the court the defendants, no doubt, had misgivings of the result of that investigation; a heavy liability was to fall upon them if it should be

determined that their attachment had been wrongfully taken out. It was important to avoid the risk of such a responsibility. It was an object with them also to annul the contract in regard to the Live Oak plantation, for if it should be decided to be a sale and it merged a large part of Packard's debt, they were to have on their hands a property burdened with a mortgage amounting to over seven thousand dollars, which they had assumed to pay; and from the depressed value of lands about that time the Live Oak plantation was not likely to be available as a means of readily raising money. This state of things, we think, did exist at the time the compromise was made, and from it we conclude the defendants felt a strong interest in entering into it. It was then a primary object with them to impress the plaintiff with the belief that the deed of the Live Oak plantation had never been signed and accepted, and therefore there was no payment of the ten thousand dollars of the plaintiff's debt to them. Accordingly we find Ober going to the office of Packard's counsel to inform him of the non-execution of the deed and of the employment by Ober, Atwater & Co. of experts to compare Janney's real signature with that to the deed, and of the result of their examination; and also that Janney denied that he ever signed the deed at all. Added to this it may be stated, what we have before noticed, that a day or two afterwards, Janney himself said to the counsel of Packard that he had not signed the deed, and that he would so swear. The unexecuted act called a "rescission," to which we have before referred, drawn up by the defendants' attorney, shows the solicitude with which they desired to annul the deed of the Live Oak plantation, to get clear of it as owners and to stand merely as mortgagees of that property. It is clear that the defendants' counsel was satisfied that it would be to the interests of his clients to compromise and that he advised it.

From the entire range of facts and circumstances that come into view in this litigation, we think it sufficiently clear that Ober, Atwater & Co. had strong inducements to effect a compromise, and in order to carry out that purpose they were mainly instrumental in impressing upon the mind of the plaintiff's counsel, and also upon that of the plaintiff himself, the belief that the deed of sale of the Live Oak plantation had not been signed by the defendants' agent. We conclude that Packard, in entering into the compromise, acted under an error of fact bearing upon the principal cause of the agreement, and therefore that the act of compromise is null and void. C. C. 1824; 4 La. 347; C. C. 1827, 3079; 10 Rob. 65; 15 An. 268.

As the effect of the annulment of the compromise made by the parties is to restore things to the condition they were in previous to that time, we think the defendants, Ober, Atwater & Co., are entitled

to credit for the amount of the note for eight thousand three hundred and three dollars and forty-nine cents, which according to the plaintiff's own showing was given by him to the defendants in the spring of 1867 on a settlement of their business, and which note, by his own allegations, together with the sale to them of the Live Oak plantation, settled his indebtedness to the defendants. We are not satisfied from the record how or when this note was paid. If it were unpaid at the time of the compromise it must remain unpaid yet. It is equally so if it entered into the compromise, that being declared void.

The defendants having assumed to discharge the unpaid balance of the price of the Live Oak plantation due by Packard to Johnson from whom he bought, viz., the sum of seven thousand five hundred dollars, they should be indemnified against their liability to pay that balance. In these respects the judgment of the lower court should be amended.

It is therefore ordered that our former decree be set aside, the defendants Ober, Atwater & Co. be and are hereby decreed to be entitled to a credit of eight thousand three hundred and three dollars and forty-nine cents upon the judgments rendered against them in these consolidated cases by the district court, to date and take effect from the twentieth of June, 1870, the day on which judgment was rendered against them in said court. It is further ordered that the said defendants be and they are hereby authorized to retain in their hands out of the amount of the judgment now finally decreed against them the sum of seven thousand five hundred dollars, for and during the space of ninety days as an indemnity to them against the aforesaid mortgage on the Live Oak plantation; and to the extent of that sum (seven thousand five hundred dollars), execution is suspended for the said space of ninety days. And, if within that time, the said defendants shall not have filed in the Sixth District Court of New Orleans in this suit, sufficient legal evidence of their having paid and satisfied said mortgage in full or been satisfied by the sale of the Live Oak plantation, then and in that case execution to issue in favor of plaintiff for the said sum of seven thousand five hundred dollars. It is finally ordered that as thus amended the judgment of the district court be affirmed, the plaintiff and appellee paying costs of this appeal.

LUDELING, C. J. I adhere to the opinion and decree heretofore rendered. The error complained of is an error as to what evidence or proof could be adduced, and not an error of fact bearing upon the principal object of the compromise.

Mr. Justice Wyly adheres to the original decree delivered in this case.