(36 South. 812.)

No. 15,139.

## DAVENPORT v. F. B. DUBACH LUMBER CO.

(June 6, 1904.)

COMPROMISE—VALIDITY—EVIDENCE—INJURY
TO EMPLOYÉ—PROXIMATE CAUSE.

1. A young negro man employed by a lumber company as a brakeman on a railroad run by the company in connection with its mill lost both his legs as the result of being run over while coupling a locomotive to a train of log cars. While he was yet under the influence of opiates, and hardly knew what he was doing, and in great pain, either just before or just after the amputation of his legs for the second time, he was induced by two white men—one the general manager of the lumber mill and the other the agent of an insurance company holding an employer's accident policy on the lumber company—to accept $50 in full of all claims for damages he might have against the lumber company growing out of the accident. *Held*, under the circumstances, the compromise was not the free and voluntary act of the wounded man, and must be set aside.

2. Where a brakeman is run over in consequence of his having stumbled and fallen while attempting to couple the locomotive to a car by holding up the coupling bar and walking ahead of the engine, instead of using a footboard attached to the pilot of the engine for him to stand on, the railway company will be responsible for the accident, notwithstanding the negligence of the brakeman, if it is shown that after the brakeman had stumbled and fallen there was yet time to stop the engine and avoid the accident. The negligence of the brakeman, while a contributory cause of the accident, was only a remote cause, the proximate cause being the failure to stop the engine in time. And it is a matter of indifference whether the failure to stop the engine was the result of the defectiveness of the engine or of the incompetency or inattention of the engineer.

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Lincoln; R. B. Dawkins, Judge.

Action by Frank Davenport against the F. B. Dubach Lumber Company. Judgment for defendant, and plaintiff appeals. Reversed.

W. R. Roberts and Robert Roberts, Jr., for appellant. Barksdale & Barksdale, for appellee.

PROVOSTY, J. Frank Davenport, the plaintiff, a young colored man, while discharging his duties of brakeman on the railroad operated by the defendant company in connection with its lumber mill, was run over by a locomotive, and had his two legs crushed, so that they had to be amputated. He brings this suit in damages.

The train was on the yard of defendant. It was composed of 16 to 18 log cars, of which the 8 or 9 composing the front part of the train were loaded, and the others were empty. It had to be moved about 400 yards farther, to the pond, where the logs were to be dumped. For that purpose the locomotive had been detached from the front and brought to the rear. As the grade was downward to the pond, it was necessary that the locomotive should be coupled to the train in order to handle the train with safety; and it was while doing this that plaintiff was run over.

Although a number of persons were near by, only three saw the accident—the engineer, plaintiff himself, and one Rance Jackson. The engineer was not examined as a witness. Rance Jackson appeared for defendant.

His statement is that plaintiff inserted one end of the coupling bar into the drawhead of the engine, and, holding up the other end, walked ahead of the engine as it moved slowly towards the cars. That the cars moved off when the engine struck them, and the engine followed without stopping, plaintiff still holding up the coupling bar, when almost immediately (plaintiff having walked only four feet, or four steps) plaintiff stumbled as the result of his heel being struck by the pilot of the engine, and fell, and the front wheel of the engine passed over his legs.

Plaintiff testified he signaled the engine to stop, and it did so, about 10 feet from the cars; that he then put the coupling bar into the drawhead of the rear car, and was

in the act of hammering the pin so as to force it into the hole of the drawhead and coupling bar, with his back to the engine, when without warning to him the engine came down upon him, threw him down, and ran over him.

The version of the facts thus given by plaintiff is adopted in the petition; but the petition also charges that, after plaintiff had stumbled and fallen, there was still a clear chance to avoid the accident by stopping the engine, and that the engineer negligently failed to take advantage of said opportunity.

While much of the criticism of the testimony of defendant's witnesses by plaintiff's able counsel appears to be well founded, it is not possible for this court to accept plaintiff's version of how the accident happened. Putting aside the admissions which plaintiff is said to have made to the agent of the insurance company and to defendant's general manager, and putting aside the testimony of Bill Jones and Seguin, there still remains the testimony of Rance Jackson, a disinterested witness. Besides, plaintiff is contradicted by several witnesses in his statement that the locomotive went on to the pond, without stopping at all, after passing over him; and he is contradicted by Rance Jackson and Joseph Green in his statement that he himself pulled his legs from under the locomotive.

The only question must be whether defendant is not responsible even if plaintiff's version of the facts is put aside and that of Rance Jackson is accepted; in other words, whether, taking the facts as stated by Rance Jackson, the engineer did not have an opportunity to stop the engine in time to avoid the accident, and, if so, whether defendant is not responsible under the last clear chance doctrine.

The court finds that for the satisfactory determination of that issue there is absent from the record some evidence that might have been furnished, and that may yet be available; and under all the circumstances of the case the court has concluded to remand the case for taking this evidence.

It is established that plaintiff was to the right of the center of the track—that is to say, on the engineer's side of it; and the evidence would go to show that the engineer could see him as he stumbled and fell, but the evidence is not full enough on that point. If the engineer could see him, it was his duty, under the circumstances, to keep him in sight, and to set about stopping the engine the very instant he stumbled and fell.

There is no evidence going to show within what space a locomotive moving slowly as this one was doing can be stopped, if in good order, and in the hands of a competent engineer. Nor is there any evidence of the distance between the front of the cow-catcher, where Rance Jackson places plaintiff, and the front wheel of the engine; in other words, there is no evidence enabling the court to determine whether the engineer had a chance to stop the locomotive after he had seen, or should have seen, plaintiff stumble. If there was such chance, the defense of contributory negligence urged by defendant cannot avail, because the negligence charged to plaintiff would then have been only the remote cause of the accident. The proximate cause would have been the failure of the engineer to stop the engine after he had seen, or should have seen, plaintiff stumble and fall. Maguire v. Railroad Co., 46 La. Ann. 1554, 16 South. 457, and cases there cited. It would make no difference whether the nonstopping of the engine was attributable to the fault of the engineer or to the defectiveness of the brakes of the engine.

We may mention that the contributory negligence is said to have consisted in that plaintiff did not set the brakes tight enough to prevent the log cars from moving under the impact of the engine; and in that, for effecting the coupling, plaintiff walked ahead of the engine, instead of standing on the

footboard attached to the cow-catcher for that purpose.

Defendant says in his answer, but nowhere else in the record, that the engineer could not see the brakeman. But how could that be, when he had to have him in sight in order to obey his signals? Defendant says also that the engine was stopped within three feet. Had that been done, or anything like it, plaintiff would not have been injured. So far as the record shows, he suffered no injury from the pilot or cow-catcher, which must have been more than three feet long.

There is much evidence that the engine was out of order. The shoe brakes certainly were worn out, and the court is inclined to believe that the air brake also was out of order. The preponderance of the testimony is that the engineer was incompetent, and that defendant knew it. He had had a comparatively short experience even as fireman. Defendant had taken him up and intrusted the locomotive to him simply because the engineer was sick and some one had to be put in his place. But the defectiveness of the engine or the incompetency of the engineer can make no difference in the case if there was not time or space to stop the engine even if the one had been in good order and the other competent. It may be that after further evidence is taken the case will become analogous to that of Crisman v. R. R. Co., 110 La. 640, 34 South. 718, 62 L. R. A. 747; but it has not as yet reached that stage. It does not yet appear that the best of engineers and of engines could have increased the chance of plaintiff's not being run over.

Another defense is that any claim plaintiff may have had has been fully settled by compromise.

Plaintiff denies all knowledge of the compromise; says that, if he ever made it, it must have been at a time when his mind was so affected by the opiates that were being administered to him that he did not know what he was doing.

There can be no doubt that plaintiff did make the compromise; but the case presents very much the same features as that of Lampkins v. R. R. Co., 42 La. Ann. 997, 8 South. 530, and we shall let the compromise have the same fate as in that case.

The circumstances are these: The agent of the insurance company holding an employé's liability policy on the defendant company came from Chicago to the mill of defendant, and with the general manager of the defendant company went to the cabin where the young negro man lay with both legs recently amputated for the second time, when, according to his attending physician's testimony, "he was in a very bad state. To be plain about it, I called him nearly dead"— and made the alleged compromise with him, giving him $50 (which he put under his pillow) "in full settlement, accord, and satisfaction of any and all claims or demands of every description which I now have or may hereafter have against the said Fred. B. Dubach Lumber Company on account of an accident causing injury to me on or about September the 6th, 1902."

It is hardly necessary to say that a compromise such as this cannot stand. In the language of Judge Story:

"A contract with a person of weak mind or for an inadequate consideration furnishes the most vehement presumption of fraud." Story, Eq. Juris. §§ 236, 246.

The attending physician says that he administered sedatives, anodynes, and morphine to the patient, who for the first three weeks "hardly knew anything that was going on." The colored woman who was the young man's constant nurse says of him that at the time of the compromise "Frank had no sense"; and that one reason why she knows that Frank did not know the nature of what he had done was that "when they [the two white men who made the compromise] left Frank asked what they came there for, and said he reckoned he would know when he got

straight." The agent of the insurance company, and the general manager of defendant company, and a negro man they took along with them as a witness, testify that Davenport was perfectly rational, and at himself, and not suffering. We prefer to take the statement of the physician, and let the facts speak for themselves.

The court properly excluded proof of what the engineer said after the accident. It was hearsay, and did not come within the rule of res gestæ. The statement was made after the engineer had gone to the pond with the train, and had returned with his engine to the scene of the accident, and had gotten out of his cab and come to where the wounded man lay. In this interval he had had ample time to reflect and make up a story to exculpate himself and lay the blame on the defectiveness of his engine.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and the case be remanded for further trial in accordance with the views expressed in this opinion. Defendant to pay the costs of this appeal; the other costs to await the final determination of the suit.