No. 9020
Orleans

---

**HARRY REED, Appellant, v. DANIEL W. HOLDERITH**

---

(October 5, 1925, Opinion and Decree)
(November 2, 1925, Rehearing Refused)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Transaction or Compromise—Par 12.**

A compromise like any other contract may be set aside for error, fraud, or violence.

2. **Louisiana Digest—Transaction or Compromise—Par. 4.**

Courts must look with suspicion and disfavor upon a compromise effected between active agents of accident insurance companies with illiterate and untutored laborer for a lump sum bearing but a small proportion to the amount which the laborer would otherwise recover if he was entitled to a judgment.

3. **Louisiana Digest—Transaction or Compromise—Par. 14. 15.**

The evidence showing that the plaintiff signed a compromise in error, the same is not binding upon him.

Appeal from Civil District Court, Division "B", Hon. Fred. D. King, Judge.

This is a suit for damages for physical injuries. There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Alexis Brian, of New Orleans, attorney for plaintiff, appellant.

P. M. Milner, of New Orleans, attorney for defendant, appellee.

## OPINION

CLAIBORNE, J.    Plaintiff claims damages for physical injuries.

He alleges that on September 17, 1920, he was in the employ of Samuel H. Dickson & Co., unloading steel rails from a flat car on the river front; that while so engaged, he was struck and injured by a truck belonging to and then operated in the business of Widow Frederick A. Holderith; that both bones of his left leg were broken in several places and crushed; that he was carried to the Charity Hospital where he remained under treatment for two months and three weeks; that while he was in the Charity Hospital he received compensation from his employer under the Employees' Liability Act at the rate of $14.50 per week; that in the latter part of January, 1921, while plaintiff was still confined to his room on account of said injuries, the agent of the insurance company who had been bringing plaintiff the installments under the installment Act, represented to him that the doctors in charges of his case had stated that he would be well and able to go to work in about two months, and that the same insurance company would pay him $225 in settlement of all his claims under the Workmen's Compensation Act; that acting under said representations and believing he was making a compromise with the same insurance company, he made his mark, upon information and belief, to an instrument of settlement of his claims against Mrs. Holderith; that he is unable to read or write and that he affixed his mark under error, induced by the repre-

sentation aforesaid that he was signing a release in favor of Samuel H. Dickson and Co., his employer; that said settlement is null and void as regards Mrs. Holderith by reason of the representations above stated, and also as against Samuel H. Dickson and Co. for having been without the sanction of the court in violation of law; that he has been damaged to the amount of $15,000; that Widow Holderith is dead leaving seven children and heirs. Plaintiff prays for judgment against each of said heirs for his virile portion.

The defendant admitted that the plaintiff, while employed by Dickson & Co., was injured by a truck driven by an employee of Widow Holderith, in the manner stated by him; they admit that they are the heirs of Mrs. Holderith, but deny all the other allegations of the petition.

They aver "the truth and fact to be that the representatives of your respondent and likewise the representative of the Maryland Casualty Company and the New Amsterdam Casualty Company made a proposition of settlement of plaintiff's claim against both Mrs. F. A. Holderith and Samuel H. Dickson and Co., employer of the plaintiff, and that after full explanation by the representatives of said two companies to-wit, Leonard W. Jones, representing the Maryland Casualty Company and J. Eberhardt, representing the New Amsterdam Company, and in the presence of the friend and advisor of said Harry Reed (plaintiff), to-wit, Alexander Brown said Harry Reed did on the 28th day of January 1921, agree to accept in compromise of his claims both against your respondent's ancestor Mrs. F. A. Holderith and Samuel H. Dickson and Company, releasing all claims of every kind which he had against either parties, the sum of $510.38, $285.38 of which had already been paid to the petitioner by the New Amsterdam Casualty Company in the form of compensation insurance, and $225 of which was then and there paid to the

said plaintiff, by voucher-check drawn by the said Leonard W. Jones for said Maryland Casualty Company in favor of Harry Reed, who endorsed same and his signature was O. K'd. by Leonard W. Jones and J. Eberhardt; that the said Harry Reed, the plaintiff herein, retained said check until the 31st day of January 1921, when he cashed the same through the Hibernia Bank and Trust Company, New Orleans, as shown by endorsement on said check, which will be produced on the trial of this case". The defendant pleaded further that the petition disclosed no cause of action in that on the face of the petition the plaintiff was guilty of gross contributory negligence and cannot recover".

There was judgment in favor of the defendants "maintaining the compromise entered into by the said plaintiff with the said defendant's ancestor Mrs. Holderith, on the 28th day of January 1921, as good and valid and binding on the said plaintiff".

A rule for a new trial was dismissed and plaintiff appealed.

A compromise, like any other contract, can be set aside only on the ground of error, fraud, or violence C. C. 1819 (1813) 1823 (1817) 1824 (1818) 1828 (1822) 3079 (3046) 1847 (1841) 1848 (1842); Dugus vs. Town of Donaldsonville, 33 La. Ann. 670, 283; Adle vs. Narcisse Prudhomme and Wife, 16 La. Ann. 343; 12 C. J. 346, 348.

C. C. 1881 (1875). "Engagements made through error, violence, fraud, or menace are not absolutely null, but are voidable by the parties who have contracted under the influence of such error, fraud, violence or menace, or by representatives of such parties."

C. C. 1848 (1842). "Fraud like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumption, or by legal presumptions, as well as by other evidence."

"The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence."

"It is well settled however that fraud or want of good faith in the transaction may be shown by circumstantial evidence, as direct or positive evidence is rarely available in such cases." 12 C. J. 359 S. 62.

C. C. 1849 (1843). "Some circumstances and acts attending particular contracts are by law declared to be conclusive; and other presumptive evidence of fraud."

In the case of Davenport vs. Dubach, 112 La. 943, 36 South. 812, on p. 948, the court quoted the following language of Story's Equity S. 236, 246:

"A contract with a person of weak mind or for an inadequate consideration furnishes the most vehement presumption of fraud."

Although the burden of proof was upon the plaintiff to establish the error alleged by him in his compromise or settlement.

"A compromise made in good faith will not be set aside for mere inadequacy of consideration." 12 C. J., p. 354 C. C. 3078.

"Relief will be afforded however when the inadequacy of consideration is so gross as to shock the moral sense, and especially so where the attending circumstances render it inequitable to allow the transaction to stand." 12 C. J., p. 354; 112 La. 948.

"Courts must look with distrust and disfavor upon settlement or compromise effected between active and experienced agents of accident insurance companies with illiterate and untutored laborers, made destitute by their injuries, for a lump sum bearing but a small proportion to the amount which the laborer would recover if he was otherwise entitled to a jugment." 138 N. W. 483.

This principle has been consecrated in Compensation Law by S. 8, of Section 8 of the Act 247 of 1920, p. 473, which reads as follows:

"The amounts payable as compensation may be commuted to a lump settlement at any time by agreement of the parties if approved by the court as solely and clearly in the interest of the employee or his dependent; provided, that in making such lump sum settlement the payments due the

employee or his dependent under this Act shall not be discounted at a rate greater than six per cent per annum. 151 La. 281.

"A violation of this section shall subject the employer to the payment of a compensation at three times the rates fixed in this Act."

Assuming that the weekly compensation of $14.50 paid to the plaintiff by his employer was correct in amount, it was due to him for at least one hundred weeks under Sec. 8 (e) p. 470 of the Compensation Act or $1450. There was no denial that the plaintiff was entitled to this compensation, .and thereform there was no foundation for any compromise of this part of his claim.

Assuming that the allegations of the plaintiff's petition as to the injuries received by him are ·correct the measure of his right of recovery was just about the same amount of $1450.

It follows that in securing plaintiff's receipt in full for $225, as against his employer, he· remitted an assured amount of $1225 without any consideration whatsoever concerning which there .was no .contest.

And in securing his receipt in full settlement as against the author of the injury he compromised on the basis of about 15 per cent. It is only in case of a suit, that the compensation insurer can claim participation in the amount paid by the trial party or his insurer. The Maryland Company was under no obligation to reimburse the New Amsterdam Co. They were mistaken when they told plaintiff they must reimburse the compensation money.

The receipt signed by the plaintiff· is dated January 28, 1921, and is in these words:

"In consideration of the payment of Five Hundred and ten 38-100 dollars to me in hand paid by Mrs. F. A. Holderith and Samuel H. Dickson and Co., I Harry Reed, do hereby release and forever discharge said Mrs. F. A. Holderith and Samuel H.

Dickson and Co. from any and all actions, causes of actions, claims, and demands for upon, or by· reason of any damage, loss or injury which heretofore have been or hereafter may be sustained by me in consequence of an accident occurring on or about September 17, 1920, in the City of New Orleans, Louisiana, when I was struck and damaged by the automobile of Mrs. F. A. Holderith and as a result of said accident sustained the fracture of my left leg and all internal and external injuries."

This receipt bears the mark of Harry Reed, and the signature of Leonard W. Jones, Alexander Brown and J. E. Eberhardt.

The truth is, however, that the plaintiff, Reed, did not receive from Mrs. Holderith any money. He received a check from Leonard W. Jones, acting as the agent of the Maryland Casualty Company, the assurers of Mrs. Holderith. .Nor did he receive $510.38. He received the above check for $225. The difference $285.38 was paid by Jeffries Britten, Manager of said Maryland Company, in a check of said Company dated February 1, 1921, to the order of the New Amsterdam Casualty Company, to reimburse the compensation sums paid by the latter company to Reed.

The receipt reads:

"In consideration of the payment of $510.38 to me in hand paid by Mrs. F. A. Holderith and Samuel H. Dickson and Co., I, Harry Reed, do hereby release and forever discharge said Mrs. F. A. Holderith and Samuel H. Dickson and Co. from any and all actions, causes of action, claims and demands, etc."

In testifying as to this receipt, Jacob Eberhardt the agent of the New Amsterdam Casualty Company, insurers of Samuel H. Dickson and Co., the employers of plaintiff, had his attention called to the words "and Samuel H. Dickson and Co.", written twice by a different typewriter and paler ink, and was asked whether that had not been changed. He answered that it looked "like it was". But he added, "he (Reed) signed

the release just as it today * * * The day I signed my name it was a full receipt, just as it is.

"Q. Just as it is now?
"A. Yes, sir."

But Leonard W. Jones the agent of the Maryland Casualty Co., testified as follows:

"Q. Do you recall whether the release as made was in a lighter typewriting; Samuel H. Dickson and Company was on the receipt at the time when it was signed?
"A. It was not, because I didn't have anything to do with Samuel H. Dickson and Company."

He further testified that he did not know why the insertion of Samuel H. Dickson and Co. had been made after the receipt had been executed; the receipt had been under the control of Mr. Brinton, the manager of their office all the time, and he did not know of the change until the suit had been brought.

The words "Five hundred and ten 38/100" are written twice with the same typewriter as are the words "and Samuel H. Dickson and Co."

They were also written after the receipt was signed. The check of $225 was given to Reed by Jones contemporaneously with the signing of the receipt. But the check for $285.38 was given by Brinton to the New Amsterdam Company after the amount due to it had been ascertained.

Plaintiff and two witnesses testified in his behalf.

They were separated.

Plaintiff swore that while he was in the Charity Hospital, a representative of Mrs. Holderith a tall man, came to him and offered to pay him $225, but he declined to accept it; then an agent of the compensation company came to pay him compensation; that he first refused to accept it until the agent told him that it would not affect his claim against Mrs. Holderith; afterwards the agent brought him $14.52

weekly at the hospital for two months and three weeks until he went to his home, then the same agent brought to his home another man whom he represented as the "boss" of the same insurance company, Mr. Jones. They told him they were making a settlement for the insurance company. The "boss" offered him $125 which he declined. The next time they came he offered him $225 just for the Liability Insurance people; he asked him if it made any difference about his getting his money from Mrs. Holderith and he said "no", it "only kept the fellow from taking it there every week". The "boss" never mentioned the name of Mrs. Holderith, but he said he was the "boss" of the Liability Insurance Company. Aleck Brown was present at the conversation, his wife was on the gallery; he was sitting there with his leg upon a box; they gave him a check for $225; he did not read it, he can neither read nor write, nor sign his name. When he took the check he did not know that he was giving up his claim against Mrs. Holderith, if he had known that, he would not have done it. The two men told him they were from the same insurance company only one was the "boss" and the other was the clerk. He did not know the name of either. His wife collected the $225 check for him; he thought Mrs. Holderith would pay him; he did not know the name of the insurance company that paid him other than the Liability insurance. Mrs. Holderith was not mentioned.

Aleck Brown was present on the day Reed made the settlement with the insurance company; Reed requested him to be present. He told him that the gentleman who had been paying him compensation wanted him to accept $150 and said to Reed, "Well Harry, the doctor claimed at the hospital that you would be able to work in about two months, and if the doctor says that, he says, You ain't going to get paid for more than two months; anyway

you better take and save time and save different trips and it wouldn't amount to that much at $14.52 a week". Mr. Eberhardt read from a book. "He says they has a right to ask him to have him settle that way and if he don't take it, as that book tells you, they would not have any right to pay him any longer, than the doctor says"; then Jones offered him $225 instead of $150, and that was accepted, he did not read the receipt nor was it read in his presence; he is not a scholar, no particular insurance company was mentioned. He heard the Dixie mentioned (Dickson); did not hear the Maryland Casualty Company name; both claimed they represented the same insurance company; he can read and write a little; he did not read the receipt which he signed as a witness. Mr. Jones did not read it; he thought he was signing for $225; he did not know anything about $150; he is a laborer, round freight handler on the river front.

The wife of Harry Reed says she was there when some insurance agents came to Reed's house to make a settlement with him for damages on the front gallery. Mr. Jones was there, he has been there twice before. The other gentleman who used to bring the checks was there too, he told her husband to take $225 because the doctor told him that he would be able to go to work in two months, and he was not going to get any more than that. He didn't tell him about Holderith or anything like that.

Mr. Eberhardt, for the defense testified, he was 23 years old at the time of the trial; he was agent for the New Amsterdam Casualty Company, the insurer of Samuel H. Dickson and Co., plaintiff's employers; he went two or three times with Jones at Reed's house to make a settlement; Jones offered Reed $200 and then $225 which Reed accepted; he read to Reed that part of the compensation law, about:

"Where an injured party, when injured, a third party, had right of action against the third party as well as his employer; but the employer would have to enter suit with the injured party."

He read no other part of the law. Brown seems to do all the talking, and he told Reed what to say. Brown claimed to be Secretary to Reed's union, and Reed said he would go by anything Brown said. Brown and Reed retired to a room and on their return Reed said: "Give me a check for $225". Reed made his mark on the release after it was read and explained to him.

Jones went to Reed's house to make the compromise settlement; Jones said to him: "Let us go out, I want to try to settle this claim with Harry Reed." The only part he had in the settlement of the case was to read to Reed the compensation law; he said to him "Harry I am going to show you, here is what you can get. You have a perfect right to sue Mrs. Holderith and we could come in as part of the suit and get our money back; I said that the first money that would come in would be for the compensation paid you and what is over would be his. I told him he could collect his compensation all along and then sue Mrs. Holderith and then we would be a party to that suit;" the only reason why he went with Jones every time was that he wanted to get their money back for Mr. De Fuentes who told him to go with him to see that when a settlement was made they got their compensation back.

Leonard W. Jones testified that he was 22 years of age at the time of the trial; that he was agent of the Maryland Casualty Co., the accident insurers of Mrs. Holderith; that he effected the settlement in behalf of Mrs. Holderith with Harry Reed. He identified the mark and all the signatures to the receipt mentioned above, also to the check for $225 on the Maryland Casualty Co. issued by himself, as adjuster,

in favor of Harry Reed and the mark of Harry Reed on the back of the check and also the check of $285.38 to the New Amsterdam Casualty Co.. He called on Reed several times with reference to a compromise of the claim against Mrs. Holderith; he told him on his first visit that he represented her, the owner of the truck, and that he "would pay a lump sum which was to release both the owner of the automobile and the company which was paying him compensation.

"In fact one of my arguments in the making of the settlement was that I had to explain the amount which the New Amsterdam Casualty Co. had paid to him in settlement, and he said to me that he was not very anxious to settle his claim because he didn't know how he was hurt, and furthermore he could not read or write and didn't want to get taken in. I asked him if he had a friend who would advise him. He said he knew a man who was secretary of some labor union. I left the place, and then returned to his house and found a negro man there when I came back, by the name of Aleck Brown, who said he was secretary of some labor union and could read and write, but Harry (Reed) could not do either. I explained to Brown that I wanted to settle the claim, the amount I don't remember now. Anyhow, Harry refused to accept it, and I raised my offer to $225, and Harry said the Insurance Company was rich and could pay more. I explained again that I had to reimburse the other company the compensation and I would have to pay something over $500. Harry and Brown left the gallery and went into the house, and after three or four minutes' consultation Harry came out and agreed to accept $225 in cash. I read the release to him, and I explained to him that he was releasing Mrs. Holderith from all claims and also explained this to Brown."

"Q. These two witnesses (Brown and Reed) have testified that the name of Holderith was not named in this settlement. Is that true or not?

"A. I believe it was.

"The Court: You either know whether it was or whether it was not?

"A. No answer.

"Did you mention the name of Holderith?

"A. The name had to be mentioned when I read the release."

Harry Reed was asked if he understood what he was doing, and he said that he did. He explained to Harry Reed that he was representing Mrs. Holderith and not the New Amsterdam Casualty Co., which was paying his compensation; it was a cash settlement between Harry Reed and Mrs. Holderith, and with the understanding that "I was also to reimburse the New Amsterdam Casualty Co. for the amount which it had spent and it was to stop giving compensation. I was instructed by Mr. Brinton, Manager, to go to Reed's house and adjust the loss". The only provision of the Employers' Liability Law which he read was the section which give to him the right to sue either one of these parties. He explained that he had a claim against both people. He did not read that portion of the law which prohibits the injured party from settling out of court his claim for compensation against his employer.

It remains with us to weigh this conflicting testimony and to decide upon which side is the preponderance.

The testimony of the party defendant who would avail himself of the error and misrepresentations charged must not necessarily prevail, otherwise no contract could be set aside. But the testimony of the plaintiff must be given all the weight to which it is entitled.

1st The plaintiff charges that he was led to believe as a motive for his compromise that his doctor had said that in two months he would be able to go to work and that his compensation of $14.50 a week would then cease, and inasmuch as $225 was more than the future compensation he would receive in two months, he accepted the $225. Plaintiff's wife, and Mr. Brown swear that such a statement was made to Reed. Neither Jones nor Eberhardt denied that such a statement had been made.

2nd The plaintiff charges also that he was induced to believe that he was releasing the Compensation Insurance Company and not Mrs. Holderith, and that the name of Mrs. Holderith was never mentioned during the negotiations. He swears to it. Brown swears there was no name, and no particular insurance company named. Reed's wife swears that "he didn't tell about Holderith or anything like that".

The defendant relies in vain upon the receipt, to which Reed affixed his signature and to the check endorsed by Reed with his mark. Reed could neither read nor write therefore neither the receipt nor the check said anything to him. He did not read the receipt nor the check because he knew not how to read, and he swears they were not read to him. Neither did Brown read the receipt or the check; nor were they read to him. He swears to that.

Eberhardt and Jones both testify that the receipt was read and explained to Reed. But Eberhardt also swears that the name of "Samuel H. Dickson and Co." was upon the receipt when signed; he was contradicted in that testimony by Jones and by the receipt itself. Jones and Eberhardt were both interested in effecting and maintaining the settlement sought by them each for the benefit of his respective company.

Eberhardt recovered the compensation money paid by his company and Jones obtained a release of his assured, Mrs. Holderith. But both Jones and Eberhardt knew, or should have known, as they read extracts of the law to Reed, that Section 8 of the Act provides that no settlement between the employer and his employee shall be binding unless approved by the court, who is constituted the mentor of the employee, a more reliable one than Brown the negro laborer.

It does not appear that any steps were taken to have the settlement approved by the court. Yet they induced the plaintiff to believe that he was making a binding settlement. Jones was the principal in effecting the settlement, but Eberhardt profited by it.

It might have happened that his company never would have recovered the compensation money but for the settlement.

Their testimony must be affected by the nature of the transaction.

We therefore come to the conclusion that the plaintiff signed the receipt in error and that the same is not binding on him. Lamkin vs. Rrd., 42 La. Ann. 997; Davenport vs. Dubach Lbr. Co., 112 La. 942, 36 South. 812. Our judgment can bind only the defendants herein as Samuel H. Dickson and Co. are not parties to this suit.

It is therefore ordered that this judgment appealed from be reversed and set aside, and that this case be remanded for a new trial according to law and the views hereinabove expressed.