GALT et ux. v. TRAVELERS' INS. CO. et al.*
No. 13928.

Court of Appeal of Louisiana. Orleans.
April 18, 1932.

Milner & Porteous and Wm. A. Porteous, Jr., all of New Orleans, for appellants.

John May, of New Orleans, for appellees.

HIGGINS, J.

The parents of Giles Galt brought this action against his employer, the Higgins Lumber & Export Company, Inc., and the Travelers' Insurance Company, its insurance carrier, in solido, to recover funeral expenses of $150 and compensation for the death of their son, an aviator, who lost his life as a result of an accident while he was piloting a hydroplane on November 25, 1930.

The defendants admit that the young man was engaged in a hazardous employment covered by the compensation statutes, that he was killed while acting within the course and scope of his duties, and that the sum of $150 for funeral expenses is due, and aver that same was properly tendered, but denied liability as to the compensation claim upon the ground that the plaintiffs were not dependent upon their son for support. Respondents also denied the allegation that deceased was earning the sum of $250 per month at the time of his death.

There was judgment dismissing the suit, and plaintiffs have appealed.

Plaintiffs were the only witnesses in their behalf, and they testified, in effect, that they

*Rehearing denied May 16, 1932. Certiorari denied by Supreme Court June 20, 1932.

had three children, the eldest being a young lady twenty-five years of age, the young man who was killed, and a boy twenty years of age; that the father was a blacksmith by occupation, but, due to ill health for several years, had worked irregularly and, for three months preceding the accident, had been out of employment on account of sickness; that the other two children contributed to the support of the family when they worked, but that their employment was irregular; that about one year before he was killed their deceased son had been working for the Gulf Refining Company, earning $80 or $85 per month, and contributed about $75 a month to the family; that all of the members of the family lived in their residence, which was worth about $6,000; that there had been a mortgage on the home and, in order to send young Giles to an aviation school, the property had been additionally mortgaged, making the total indebtedness on the home $3,800; that it cost them approximately $2,000 for the course in aviation and maintenance of their son during his apprenticeship, and that it required about one year to complete the studies and secure a pilot's license; that during the time the young man was studying he did small jobs around the aviation field, particularly driving an automobile, for which he secured some compensation not in excess of $100 for the year that he was in training, all of which he gave to his mother, who used it in the home; that after graduation he was employed by the Higgins Company as a pilot to test a hydroplane; that he had been working about six weeks at the time the plane fell and he was killed; that he was employed by the Higgins Company to pilot this hydroplane at a salary of $250 per month; that his employer had given him a check for $25, on account of his salary, which was used by the mother to maintain the home.

On cross-examination both plaintiffs were confronted by a statement written in the handwriting of one of the insurance company's adjusters and signed by plaintiffs four days after their son's death and two days after his funeral. The statement is as follows:

"The undersigned are the parents of Giles Galt, and make the following statement concerning the financial status between ourselves and our son, Giles. In August, 1929, we mortgaged our home for an additional $2,000.00 in order to pay for a course in aviation for our son, Giles. He began his course then and completed same about six months later. While he was taking his course, he was not employed and from the time he began his course until he was employed by the Higgins Lumber & Export Company, he had not been engaged in employment and had not been able to contribute to the support of either of us. The money he received from the Higgins Lumber and Export Company, he used to liquidate his personal debts and what remained, he used for his personal needs. During the past twelve months, he has contributed nothing to the support of either of us."

Both plaintiffs admit that the adjuster read the statement to them and that they signed it, but state that at the time the statement was read to them they failed to pay attention to the reading of it due to the fact that they were both suffering from mental and nervous shock on account of their son's untimely death; that the statement is erroneous and untrue; that in addition to what is contained in the statement they also told the adjusters the facts which we have related as to their son's earnings, their partial dependency, and his contribution to them.

The evidence for the defendant consisted of the testimony of the two adjusters and the president of the Higgins Company, together with the above-written statement. The adjusters testified that they called at the home of Mr. and Mrs. Galt, who gave them the information contained in the statement; that they previously explained to the plaintiffs that it was necessary to interrogate them in order to determine if the case would fall under the state compensation statute or admiralty law and that they wanted to know whether the parents were dependent upon their son for support; that one of the adjusters wrote out the statement and that the parties voluntarily signed it.

The president of the Higgins Company testified that the officials of the company were experimenting with a hydroplane of their own design, which they intended to place upon the market, if it was successful, and licensed by the department of commerce of the federal government; that young Galt was employed as an aviator to make test flights with the plane; that he was to receive $12.50 per flight and, if the plane proved a success, he was to demonstrate the plane for the purpose of sale, with a drawing account of $200 or $250 a month; that the young man had been employed about six weeks and had made approximately six flights at the time the plane fell and he was killed; that there was due him $75, of which amount he had given young Galt a check for the sum of $25.

Plaintiffs contend that they have proven partial dependency by a preponderance of the evidence; that they have a right, under the law, to show that the statement was erroneous and untrue and that the adjusters did not incorporate in it the full information which they had given to them, and that, due to inattention on account of grief and shock, they signed it without ascertaining that all of the facts had not been included in the statement.

Defendants contend that the plaintiffs have failed to prove their case by a preponderance

of the evidence; that the statement, having been given at an unsuspicious time, outweighs their testimony given in open court; that even if the statement is entirely disregarded, the testimony of the plaintiffs shows that they were not partially dependent upon their son for support, because the amounts he is said to have contributed were not sufficient to pay for his board and lodging; and that, as only issues of fact are involved, the trial court having decided the matter in favor of defendants, this court should not reverse the decision unless manifestly erroneous.

The relevant part of the compensation statute of this state, Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357, § 8, subsec. 2, reads as follows:

"For injury causing death within one year after the accident there shall be paid to the legal dependents of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided, for a period of three hundred weeks. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident."

Following the above language is a provision (paragraphs A–D) to the effect that the wife, husband, and children shall be conclusively presumed to be wholly and actually dependent upon the deceased employee under certain specified conditions, after which is found this clause:

"In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death. * * *" Paragraph D.

Paragraph (I) of the same subsection reads:

"In all cases provided for under this Section the relation or dependency must exist at the time of the accident and at the time of death, and the mere expectation or hope of future contribution to support of an alleged dependent by an employee, shall not constitute proof of dependency as a fact."

■ We shall first take up the contention of the defendant that, even if the written statement of plaintiffs is entirely disregarded, plaintiffs have failed to prove that they were partially actually dependent upon their son for support. The record indicates, from the questions propounded by plaintiffs' and defendants' attorneys and the trial judge, that they were all of the opinion that, if the amount given by the deceased was sufficient merely to pay for his board and lodging and, consequently, leaving no excess amount to be applied to the support and maintenance of the parents, that they were not partial dependents within the meaning of the Compensation Law. In fact, counsel for both sides, in their arguments and briefs, show that they entertained that opinion at the time the case was submitted here. This court, in the case of Chauvin v. American Mutual Liability Ins. Co., 17 La. App. 187, 134 So. 450, and that of Lemmler et al. v. Fabacher, 139 So. 683, held that, where the parents sued for compensation for the death of a son upon whom they claimed to be dependent and who was residing with them at the time of his demise, the living expenses of the deceased, such as board and lodging, should not be deducted from the amount of his contributions in computing the amount of compensation due the claimants.

But counsel for defendants, after having been informed of these cases by the court, in the argument at bar, states in his supplemental brief that there is a difference of opinion on this question and that the weight of authority is contrary to our views, citing Zurich Gen. Accident & Liability Co. v. Industrial Commission, 196 Wis. 167, 216 N. W. 137, 220 N. W. 377; Clark v. Industrial Commission, 197 Wis. 597, 222 N. W. 823; Maryland Casualty Co. v. Bess, 33 Ga. App. 798, 127 S. E. 828; Bogdoll v. J. P. White Co., 4 N. J. Misc. R. 774; Golden v. Wilson & Co., 129 Kan. 100, 281 P. 860; Gossen v. Township of Borgholm, 174 Minn. 227, 218 N. W. 882; Tomhave v. Galena, 180 Minn. 289, 230 N. W. 652.

We think it sufficient to say that, since the submission of the instant case, our Supreme Court, on March 30, 1932, refused a writ of certiorari in Lemmler et al. v. Fabacher, supra, which had been based upon the case of Chauvin v. American Mutual Liability Ins. Co., supra, and the authorities therein cited. Therefore we consider the law settled on this point as far as this court is concerned, whatever may be the situation in other jurisdictions.

In the case of Fuhrmann et al. v. Keenan, 11 La. App. 66, 120 So. 403, this court, in reversing the judgment of the trial court, held (Syllabus):

"On appeal in action for workman's compensation, testimony of claimant as to dependency and as to amount expended for funeral and incidental expenses will not be disregarded altogether, notwithstanding that some statements seem improbable, in absence of any contradictory evidence."

The Supreme Court granted a writ of certiorari in the Fuhrmann Case and affirmed our decision, saying:

"Only one witness testified in the case, and that witness was the claimant. The Court

of Appeal held that the testimony of the claimant, which was not rebutted, could not be disregarded, and it therefore found, as a fact, that the claimant was a partial dependent, and entitled to compensation at the minimum rate fixed by the State Employers' Liability Acts. This finding of fact is conclusive." Fuhrman et ux. v. Keenan, 168 La. 642, 122 So. 892.

Now, since the law does not require the deduction of the living expenses of the deceased son from his contributions to his parents, if the written statement of plaintiffs is eliminated from consideration, it is our opinion that the testimony of plaintiffs is sufficient to prove that they were "partially actually dependent upon his earnings for support at the time of the accident and death." Gregory et al. v. Standard Oil Co. of La., 151 La. 228, 91 So. 717; Hamilton et al. v. Texas Co., 151 La. 692, 92 So. 301; Fuhrmann et al. v. Keenan, supra; Rome et al. v. Mexican Petroleum Corp. of La., 3 La. App. 523; Zeller v. Louisiana Cypress Lumber Co., 9 La. App. 609, 121 So. 670.

The next question is: What effect does the written statement of the plaintiffs have upon the weight of their testimony?

From an examination of the authorities we find that courts will disregard any written statement tending to impeach or contradict the testimony of a witness, or a litigant, where it is shown to have been obtained through error, fraud, misrepresentation, or violence. Le Blanc v. Bertant et al., 16 La. Ann. 297; Packard v. Ober, 26 La. Ann. 424.

Our courts also have been reluctant to accept statements as evidence, or give effect to compromise agreements, where the party signing was either in great physical pain, or suffering from great mental and nervous shock, on the ground that such statements, or compromise agreements, are not free and voluntary. Davenport v. F. B. Dubach Lumber Co., 112 La. 943, 36 So. 812.

In the case of Reed v. Holderith, 3 La. App. 378, this court said (Syllabus):

"A compromise like any other contract may be set aside for error, fraud, or violence.

"Courts must look with suspicion and disfavor upon a compromise effected between active agents of accident insurance companies with illiterate and untutored laborer for a lump sum bearing but a small proportion to the amount which the laborer would otherwise recover if he was entitled to a judgment.

"The evidence showing that the plaintiff signed a compromise in error, the same is not binding upon him."

In the case of State v. Burt, 41 La. Ann. 787, 6 So. 631, 6 L. R. A. 79, the accused had been convicted of the crime of manslaughter and sought a new trial upon the ground of newly discovered evidence tending to contradict and impeach the testimony upon which he had been convicted. The Supreme Court, in affirming the judgment of the lower court, which declined to grant a new trial, held (Syllabus by the Court):

"Much more importance is due to the testimony of a witness given on the trial in open court than to any statement which he may have made on some other occasion, either before or after the trial."

In Delcourt v. Bernard, 18 La. App. 616, 136 So. 909, 910, the plaintiff had been run down by an automobile on the street and brought suit for damages for personal injuries. On the trial of the case he testified that he looked up and down the street to see if any automobiles were approaching and, seeing none, ventured across, when he was struck by defendant's automobile, which came from behind some other cars. On cross-examination he was confronted with a written statement dictated by himself five days after he was injured to an adjuster of the insurance company which carried the liability insurance on defendant's car, in which statement he asserted that there was considerable automobile traffic on the street at the time that he was run down. Plaintiff stated that the statement was incorrect due to the fact that it was made while he was in the hospital confined to bed and suffering from injuries. The court said:

"A statement thus made to an employee of the Insurance Company is not the equivalent to testimony given under oath, where the witness is subjected to examination and cross-examination. Courts should rather be guided by the testimony given in open court, and which should prevail over statements of that character, unless, for weighty reasons, the evidence given under the eye of the judge should be discarded.

"Mr. Williams, the adjuster, was industriously engaged in taking statements from plaintiff and other witnesses in the case. It may be that he was actuated by the purest motives, but we must say here that such systematic taking of testimony by adjusters or others similarly situated, unless transcribed with the view of making a settlement, should not be encouraged because of the indifference of witnesses, their probable inattention, or on account of the inaccuracies which may slip into such statements."

The federal courts have also frowned upon the practice of obtaining statements from parties who were not in a normal state of mind either on account of mental and nervous shock, or physical injuries. In the opinion rendered in The Ocracoke (D. C.) 159 F. 552, 555, where the libelant filed a libel for personal injuries and respondent sought to impeach and contradict his testimony by showing that, at the time he fell from the ship or gangplank to the pier, he stated he was at

fault, in deciding in favor of libelant the court said:

"These statements are not entitled to great weight, especially when they are introduced to impeach the evidence of thoroughly reliable witnesses. The Supreme Court of the United States in Coasting Co. v. Tolson, 139 U. S. 551, 11 S. Ct. 653, 35 L. Ed. 270, stated to some extent its view of this class of testimony, and the court can but feel that employees of corporations frequently weaken, instead of strengthen, their cases in the vigilance displayed in procuring evidence of this character, at a time when the humanities of the case would appear to call for sympathy for the injured persons, rather than to commit them to statements that would deprive them of what might be their just dues."

▮ The general rule with reference to the weight to be given to the testimony of witnesses or parties litigant where they have made conflicting statements is briefly stated in the syllabus in the case of Chicago City Ry. Co. v. Ryan, 225 Ill. 287, 80 N. E. 116, as follows:

"Where a witness is contradicted as to a material matter, or evidence is offered showing that he has made statements at another time inconsistent with his testimony as to a material matter, he is not thereby impeached, unless the jury believe from the contradiction or proof of inconsistent statements that the witness has willfully sworn falsely as to the material matter in reference to which he has been contradicted or has made inconsistent statements at another time."

To the same effect, see, also, Beedle v. People, 204 Ill. 197, 68 N. E. 434, and Yoes v. State, 9 Ark. 42.

In the case of Nelson v. Henderson Iron Works & Supply Co., 1 La. App. 332, the father brought a suit for compensation on the ground that his son, upon whom he alleged he was partially dependent, had been killed while in defendant's employment. The defense was that plaintiff was not dependent upon his son for support. Plaintiff testified that he was a negro preacher with a salary of $40 a month, and that the family, who lived in a rented house, consisted of his second wife, a daughter eighteen years old, and the deceased son, twenty years of age; that the deceased contributed $20 a month to defray the expenses of his sister, who was attending college, and also paid the same amount for board at his father's house. The defendant sought to impeach and contradict plaintiff's testimony by introducing a sworn written statement which the defendant admitted he signed and which contained this language: "That he [plaintiff] and his family were not dependent upon his son, Ed Aubry Nelson, for a livelihood." The court, in reversing the judgment of the district court and in awarding compensation to the plaintiff, said:

"We might say, to begin with, that we attach but little importance to the statement signed by the plaintiff. Even if he had been properly advised as to his rights—which he was not—his statement was no more than a conclusion of law on his part, and is not binding upon him or the court. He testifies that he did not understand what he had signed, and that he signed it for the purpose of getting a settlement from the company. He says that after he signed the paper, the gentleman who prepared it—a representative of the indemnity company—told him that he would hear from the company in a few days. And we think his testimony as to his purpose is true; otherwise, we should be compelled to believe that he intended to renounce, without any consideration whatever, his claim against the company. This is something that common experience teaches us rarely, if ever, happens."

▮ From the foregoing authorities it appears to us that a sworn or written statement given and signed by a witness or a litigant, which statement contradicts the testimony which he subsequently gives in open court, is not accepted by the courts as conclusively impeaching his testimony, and that the courts will look to the facts and circumstances and the evidence in each particular case to determine whether or not greater weight and credence will be given to the written statement, or the testimony given in open court.

Turning our attention again to the evidence in the case, we have no doubt that the deceased was a devoted son and that the affection and love of his parents was deeply centered in him. He must have proven himself deserving and worthy for his parents to have mortgaged their home for $2,000 in order that he might study aviation. They testified that their purpose in doing this was to give the boy a better earning capacity, so that he might assist his father, who was in ill health, in sharing the responsibility of providing for the family. It is only natural that parents, who are suddenly aand without the slightest warning of impending disaster notified of the death of a son, who had lived with them all his life and was in the vigor of young manhood, would be exceedingly shocked and despondent over such an irreparable loss. At such a time, it would seem to us, their minds would be absorbed in grief and, consequently, they would not pay the same close attention, or exercise the same degree of care in transacting business matters, as under ordinary circumstances.

▮ But, be that as it may, the plaintiffs testified that the check for $25 that Mr. Higgins had given to their son was cashed by the mother and used in defraying the expenses of the home. This check with its indorsements was in the possession of the Higgins Company, one of the defendants, and no

effort was made to produce it in evidence. If it had been cashed by Mrs. Galt, as she and her husband testified, it would be most likely that the check bore her indorsement as a result of negotiating and cashing it. The check, therefore, would be either a strong corroborative circumstance supporting the plaintiffs' testimony, or it would have tended to contradict their testimony in the absence of any indorsement. But the defendants, with this evidence in their possession, failed to introduce it at the trial, and the presumption follows that, if it had been produced, it would have supported the testimony of plaintiffs.

Our attention is drawn to another circumstance in the case which we believe to be important, and that is that, after the plaintiffs had testified that the written statement which they had signed was not an accurate and truthful one because it did not contain all of the facts which they had narrated to the defendant's adjusters, the defendants placed the adjusters on the stand, but did not ask them if the statement did contain all of the facts told to them by the plaintiffs. In short, the testimony of the adjusters does not contradict the testimony of the plaintiffs that the statement was erroneous and did not give all of the facts as they stated them at the time. The defendants were content with the testimony of the adjusters that they had been at the home of the plaintiffs, got from them the information contained in the statement, and wrote it down and, after reading it to the plaintiffs, had them sign it.

We are convinced that, when the plaintiffs' son worked for the Gulf Refining Company about a year preceding his death, he contributed practically all of his earnings to the support of the home. While it is true that what he contributed at that time cannot be considered to determine the amount of compensation, because under the provisions of the Compensation Law the amount of earnings and contributions at the time of the employee's death is made the basis of computation of compensation, nevertheless that evidence is material, as it tends to show the disposition, practice, and habit of the young man to contribute to the support of his mother and father when he was employed. This would be in further corroboration of the plaintiffs' testimony that, when he was paid the $25 in the form of a check, he gave the entire amount to his mother to be used in the home.

It is noted that the written statement signed by plaintiffs is rather digested and, in some measure, states conclusions. In the courtroom, where the plaintiffs were subject to direct and cross examination, all of the details and facts concerning their relation with their son were thoroughly gone into.

It might well be that the plaintiffs, like the counsel in the case and the trial judge, were of the opinion that the small amounts which their son contributed during the year preceding his death did not make them dependents, as these contributions were insufficient to pay for his personal needs and debts, i. e., his living expenses.

A careful reading and study of the record, and particularly the testimony of the plaintiffs, leaves us with a definite impression that they are simple people and, of their frankness and candor, we are convinced that they are honest and told the truth on the witness stand. In the light of the authorities and our appreciation of the evidence, we believe that the testimony outweighs the written statement and that the plaintiffs have shown, by a preponderance of the evidence, that they were partially actually dependent upon their son for support at the time of the accident and his death. Balthazar v. Swift & Co., 10 La. App. 25, 119 So. 906, 120 So. 896.

Able and industrious counsel for defendant has referred us to the cases of Edwards et al. v. Standard Gin & Mfg. Co., 12 La. App. 153, 125 So. 593, and the case of Zuviceh v. Schnyder, 18 La. App. 121, 137 So. 379, contending that these two cases are directly in point and conclusive of his contention that the written statement should be given greater weight than the testimony of the plaintiffs and that they have failed to establish dependency, as required by law.

The first case is distinguishable from the instant case because in that case the court said that, eliminating entirely the written statement, the testimony of the plaintiffs convinced the court that they were not dependent upon their son for support. The second case, which was decided by this court, is not in point and is to be differentiated from the present case because there we found that the plaintiff, on the witness stand, affirmed the truth of her written statement except for an immaterial fact and, under the circumstances, we held that the written statement was entitled to greater weight and credence than the plaintiff's testimony, which was self-contradictory.

Finally, taking up the matter of computing compensation, we find that it is immaterial to determine whether the young man was receiving a salary of $250 a month, or was being paid $12.50 a flight, because in either event the record shows conclusively that the total amount that plaintiffs claim he contributed to them during the year preceding his death was $125. Consequently, in figuring the amount of compensation due under subsection 2 of section 8 of Act No. 242 of 1928, p. 357, supra, they would be entitled only to the minimum amount of compensation of $3, as fixed in subsection 3 of section 8 of this act. See Fuhrmann et al. v. Keenan,

supra, and Plick v. Toye Bros. Auto & Taxicab Co., Inc., 13 La. App. 525, 127 So. 59.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of Mrs. Estelle Galt and Frederick H. Galt, plaintiffs, and against the defendants, the Higgins Lumber & Export Company, Inc., and the Travelers' Insurance Company, in solido, in the sum of $3 per week for 300 weeks, beginning November 25, 1930, with interest upon each installment thereof from its due date at the rate of 5 per cent. per annum, until paid, and also the sum of $150 for funeral expenses. Appellees to pay the costs of both courts.

Reversed.

JANVIER, J. (dissenting).

If the facts given in the written statement made by claimants four days after the death of their son are true, then they were not dependents of their son and are not entitled to compensation.

I concur in the opinion of my associates that, where a written statement is obtained from a person who is so overcome by grief as to be irresponsible, or from some one who has been improperly imposed upon, or prevailed upon to say something not intended, such statement should be given no credence if it is in conflict with a statement made later, under oath, and after due consideration.

On the other hand, where, as here, such statement is freely given and there is not a syllable of evidence to show that any improper force or method was used in obtaining it, and where, as here, the statement refers to the particular detail on which the entire controversy depends, then I feel that such statement, made soon after the accident and before thoughts of a claim for damages or for compensation were entertained, should be given much more weight than subsequent testimony produced in an effort to obtain financial redress for the results of the accident.

It will not do to say that claimants, when they made their statement—they do not deny that they made it—overlooked the fact that their son had contributed to them the $25 he had received from the Higgins Lumber & Export Company, because that very money was referred to by them in their statement as having been used by their son for his own needs.

I cannot see how the adjusters can be criticized for calling upon claimants four days after the death of their son in an effort to ascertain whether they were entitled to compensation.

Surely it cannot be said that insurers should be required to pay claims without making investigations.

If investigations must be made, then why should they not be made four days after the death on which the claim is predicated. If there is a longer delay, claimants themselves usually protest.

The statement made by claimants was fairly and properly obtained and is more valuable than the contrary testimony given after thoughts of recovery had entered their minds.

As I cannot see that there is any distinction between this case and Zuvich v. Schnyder, 18 La. App. 121, 137 So. 379, and Edwards et al. v. Standard Gin & Mfg. Co., 12 La. App. 153, 125 So. 593, I respectfully dissent.