PLICK v. TOYE BROS. AUTO & TAXI-CAB CO., INC.

___

(March 10, 1930. Opinion and Decree.)
(May 5, 1930. Rehearing Refused.)
(July 2, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

___

Normann, Breckwoldt & Schwartz, of New Orleans, attorneys for plaintiffs, appellants.

John P. Sullivan and David Sessler, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. This is a suit for compensation by the parents of Frank Alexander Adams, alleged to be due as a result of the death of their son in the course and scope of his employment with the defendant corporation, under the provisions of Act 20 of 1914, as partially amended by Act 85 of 1926, and known as the Employers' Liability Act of this state. The defendant denied liability on the several grounds hereinafter set forth. There was judgment in favor of defendant dismissing plaintiffs' suit, and plaintiffs have appealed.

The petition alleges that plaintiffs are the mother and father of the deceased, who was killed on December 23, 1926, while acting in the course and scope of his employment as a taxicab driver for the defendant corporation, which is engaged in the taxicab business in the city of New Orleans, a hazardous occupation; that his death resulted from an intersectional collision at the corner of Peniston and Carondelet streets, this city, between the taxi-

See 11 La. App. 106.

cab which the deceased was driving and a truck owned by Tusa Bros.; that they were dependent upon their son for support, who had never married and left no children, and received support regularly from him; that they are entitled to compensation for three hundred weeks on a basis of 65 per cent. of an average of $25 per week, or $16.25 per week, making a total of $4,875, and also funeral expenses incurred in the sum of $150.

Defendant filed an exception of no cause or right of action, which was overruled. Defendant then answered, denying liability, and setting up the following defenses:

(1) That the Employers' Liability Act, Act No. 20 of 1914, as amended in part by Act 85 of 1926, was not applicable to the present case, as paragraph 6 of section 3 of the amending act provides "that this act shall not apply to employees of less than the minimum age prescribed by law for the employment of minors in the trades, businesses or occupations specified in paragraph 2 of Section 1, or that may be determined to be hazardous under the operation of paragraph 3 of Section 1"; that Ordinance No. 7475, Commission Council Series of the City of New Orleans, provides "that no person shall be entitled to such certificate to act as chauffeur or driver of a motor vehicle of any kind operated for a fee, charge, profit, or reward, unless he be at least twenty-one years of age"; that therefore, as the law prohibited the decedent from acting as a chauffeur because he was not twenty-one years of age, the case is expressly excluded from the provisions of the Compensation Law.

(2) That the alleged accident did not occur in the course and scope of the employment of the deceased, because at the time of his death he was on a journey of his own and business for himself, and collected fares with the intention of converting them to his own use, and therefore was not acting in the course and scope of his employment.

(3) That the deceased at the time of his death was deliberately violating two provisions of the traffic ordinance of the city of New Orleans regulating safety of life and limb, first, in driving at a rate of speed in excess of 35 miles an hour, and, second, in ignoring the traffic sign "Stop" which was painted on the pavement in the center of Peniston street about twenty feet from the intersection of Carondelet where the accident occurred.

(4) That the deceased deliberately failed to use an adequate guard and protection against accident provided by the defendant, as he failed to use either the foot or emergency brakes of the taxicab, which were in good order.

(5) That the deceased's deliberate act in driving the automobile at an excessive rate of speed of thirty-five miles an hour, in violation of the city traffic ordinance, and his deliberate failure to stop in obedience to the traffic signal in Peniston street, amounted to wilfully injuring himself, and therefore the petitioners were not entitled to recover under the express provisions of the Employers' Liability Act.

(6) That the Compensation Act is not applicable, as the deceased violated Act 138 of 1926, in failing to pull the flag on the meter of the taxicab.

(7) That the deceased did not come under the provisions of the Compensation Act, as he was not receiving a salary, but was working on a commission basis, and therefore it was a contract of bailment and not employment.

(8) That deceased was employed by defendant on December 17, 1926, on his false representations that he was a white man, age twenty-one years, and held a chauffeur's badge issued by the city of New Orleans for the year 1926; that it was only after his death that defendant learned the deceased was a negro, age twenty years, and was using a chauffeur's badge for the year 1926, which belonged to a third party; that deceased represented himself as "Frank Alexander," whereas his correct name was "Frank Alexander Adams"; that defendant is engaged in operating a general automobile and taxicab business in New Orleans, and at no time ever employed colored men for the purpose of driving its taxicabs, which rule of the company was generally and publicly known; that the company also had a rule never to employ any chauffeur under the age of twenty-one years; that defendant's rule not to employ chauffeurs under this age without a chauffeur's badge of the city of New Orleans and colored men was well known to the deceased and that his false representations were made for the purpose of securing employment; that defendant, relying upon the false representations of the deceased, employed him, but would not have done so had the true facts been known; that the contract of employment was therefore null and void because of the fraudulent misrepresentations, and hence plaintiffs are not entitled to the benefits of the Employers' Liability Act.

(9) Defendant further urged as a defense that the parents were not dependent upon the deceased for support, and, in the alternative, that they were only partially dependent, and further, in the alternative, that the evidence is not sufficient to permit the court to fix the amount of compensation for such partial dependence.

The exception of no cause or right of action is based upon the ground that the decedent's employment as a chauffeur of a taxicab is not a hazardous occupation. The Supreme Court of this state, in the case of Haddad vs. Commercial Motor Truck Co., 146 La. 899, 84 So. 197, 9 A.L.R. 1380; Id., 150 La. 327, 90 So. 666, said:

"We think we may take cognizance of the fact that motortrucks are operated or propelled by gasoline engines or motors, which by the use of gasoline produce their own energy or motive power. The driving of such motortrucks necessarily involves the operation of such engines. * * * Would the driver of a motorbus for the transportation of freight and passengers be engaged in the operation of an engine or machinery? We think so. Not only does the operation of a motortruck involve the operation of an engine (gasoline), but also the operation of machinery, in its broader sense, as defined by the authority above cited. It involves the operation of the gasoline engine, as a part of the machinery of the truck, which in the ordinary, common, and everyday use of the word is a 'machine.'
"We therefore think that the exception of no cause of action should be overruled."

See, also, Powell vs. Spencer Bros., 5 La. App. 219, and Hicks vs. Parish of Union, 6 La. App. 546.

In view of the fact that the deceased was driving a public taxicab in a large city, where traffic is congested and danger imminent, the nature of the employment might be considered hazardous. However, we believe the above case to be controlling on the issue raised by the exception of no cause of action, which was therefore properly overruled.

We shall now discuss the defenses in the order in which they have been hereinbefore outlined:

(1) When this case was originally heard in this court, the judgment of the district

court was sustained on the ground that the Compensation Act did not apply, as the evidence showed that deceased was less than the minimum age prescribed by the ordinance of the city of New Orleans for the employment of chauffeurs. See Plick, wife of Adams, and Adams, vs. Toye Bros. Auto & Taxi Cab Co., 11 La. App. 106, 120 So. 721, decided February 25, 1929. However, the Supreme Court granted a writ of certiorari and reversed the judgment of this court on the ground that the language "minimum age prescribed by law" referred to an act of the Legislature, or state law, and not a municipal ordinance, and, as there was not any state law forbidding a minor to act as a chauffeur in this state, the Compensation Law was applicable. See Pl'ck, wife of Adams, and Adams, vs. Tusa, 169 La. 44, 124 So. 140. The case was then remanded to this court in order that the other issues presented might be determined.

(2) Under the defense that the deceased was not acting within the scope of his employment, the defendant undertook to show that, on the day of the accident, the inspector for the defendant company was unable to locate the deceased at the place he was directed to be stationed; that about noon he was seen to have persons in the cab with him; that at the time of the accident, at 4:30 p. m., the meter of the cab showed that it had gone 22.2 miles, but that there were no fares registered; that at the time the coroner examined the body of the deceased there was found in his pockets the sum of $7.82 in cash, and that, when he left home on the morning of the accident, he only had 35 cents in his pocket. Defendant therefore contends that the deceased was acting without the scope of his employment, because he intended to embezzle the money collected as fares, and that the Compensation Act is not applicable.

Plaintiffs' evidence shows that deceased was a young man of good reputation, industrious, and reliable. This evidence is corroborated by the defendant's evidence to the effect that the deceased had been employed from the 17th to the 23rd of December, and had made correct returns of fares each day, in accordance with the checking of his meter, and there was no suspicion while in the employment of the defendant that he had been dishonest.

Conceding that the deceased was not acting within the scope of his employment in the forenoon or afternoon—and the record fails to convince us of this fact—if at the time he was killed he was going upon the company's business, he would be acting within the scope and course of his employment, and therefore come within the provisions of the Compensation Law. There is no positive evidence to show that, at the time of the accident, the deceased was going upon or returning from an errand, journey, or business of his own. The burden of proof was upon the defendant to prove this special defense, and it has failed to do so. On the other hand, the record does show that the deceased was killed while driving the taxicab of defendant as its employee.

Conceding also, that Adams was a dishonest employee—and the record falls far short of establishing that fact—he would still come under the Compensation Law because of his status as an employee at the time he was killed.

(3) The contention that the deceased did not come within the provisions of the Compensation Act, because he was violating the traffic ordinances of the city of New Orleans in operating the taxicab at

an excessive rate of speed and in failing to stop, is without merit. Section 36 of Act 20 of 1914 reads as follows:

"That no contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this act except as herein provided."

Section 28 of the act reads as follows:

"* * * That no compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another, or (2) by the injured employee's intoxication at the time of the injury, or (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him, or (4) by the employee's deliberate breach of statutory regulations affecting safety of life or limb."

The only relevant part of section 28 is the language to the effect that the compensation will not be allowed for an injury caused "by the employee's deliberate breach of statutory regulations affecting safety of life or limb." The Supreme Court, in its recent decision in this case, cited supra, held that the language in the compensation statute, "minimum age prescribed by law," referred to a legislative or state act, and not a municipal ordinance. The same reasoning is applicable here, and more so, because of the words "statutory regulations." The word "law" is more general than the word "statutory." "Statutory" could only mean, in view of the recent decision of the Supreme Court, a state law or statute.

(4) The evidence does not sustain the defense that the deceased failed to use an adequate guard or protection against accident in not using the emergency or foot brakes, which were in good order. The record convinces us that the accident was the result of carelessness and recklessness on the part of the drivers of both vehicles. The deceased either believed that he had time to cross the intersection before the truck would reach him, or did not see the approaching truck due to the obstruction of another vehicle between himself and the truck, and some palm trees on the sidewalk, and therefore did not attempt to put on his brakes. The deceased's failure to apply the foot or emergency brake under the circumstances was not a deliberate failure to use an adequate guard or protection within the meaning of section 28 of Act 20 of 1914.

(5) We do not find that the evidence supports the defendant's contention that the actions of the deceased amounted to willfully injuring himself in driving the taxicab at an excessive rate of speed and failing to stop, in violation of the traffic ordinance of the city of New Orleans, within the provisions of section 28 of Act 20 of 1914. This defense is equivalent to saying that recovery is barred by negligence and carelessness, which are expressly excluded as a defense under the act. The evidence clearly shows that the accident was the result of the mutual negligence of both drivers. Plick et al. vs. Tusa et al. (La. App.) 124 So. 678.

(6) Defendant also contended that this case does not fall within the provisions of the Compensation Act because the deceased failed to pull the flag of the meter, as required by Act 138 of 1926. This act makes it a misdemeanor for a chauffeur to fail to pull the flag attached to the meter, so as to constantly show the passenger the exact charges registering on the meter. The violation of this act would not affect the status of the deceased as an employee. The act is obviously not a statutory regulation affecting the safety of life

or limb, as provided in section 28 of Act 20 of 1914. We find the contention untenable.

(7) Defendant also contended that the case does not come within the provisions of the Compensation Law, because the deceased was working for a commission and not a salary. In the case of Jones vs. Landry, 10 La. App. 740, 122 So. 913, this court held that, where an employee was doing piecework and not working for regular wages, the Compensation Law was applicable. In principle we cannot distinguish these two cases, and therefore find that the Compensation Law applies.

(8) The defense that fraud vitiated the contract of employment and rendered it null and void, and that therefore deceased was never an employee, presents a serious and difficult legal question. It must be constantly borne in mind that the Supreme Court of this state has repeatedly held that a liberal construction should be placed upon the provisions of the Employer's Liability Act in favor of the employee and dependents.

"Employers' Liability Act will be liberally construed in favor of employee and dependents." Jones vs. Powell Lumber Co., 156 La. 767, 101 So. 135.

"The workmen's compensation statutes being intended to take the burden of the waste of life and limb off the shoulders of working men and to place it upon those of their employers, to give such effect to the statutes they should be liberally interpreted." Dyer vs. Rapides Lumber Co., 154 La. 1091, 98 So. 677.

And it was stated in Byas vs. Hotel Bentley, 157 La. 1032, 103 So. 303, 304:

"The Court of Appeal has given the statute a narrow and technical, rather than the liberal, construction intended and contemplated by the lawmaker, and as expressed in numerous decisions of this court."

"A liberal interpretation should be given by the court to the Workmen's Compensation Law * * * in favor of those intended to be benefited thereby." Grant vs. Louisiana Sawmill Co., 6 La. App. 673.

See, also, Mackey vs. Fullerton Naval Stores Co., 4 La. App. 43; Watkins vs. Roach, 4 La. App. 259.

At the time the deceased was employed, there was a strike by the chauffeurs in the employment of the defendant. The defendant, in employing chauffeurs to replace those who had gone on a strike, was not as exacting in its requirements as to the qualifications of chauffeurs as it had been in normal times. It is doubtful if the conduct of the deceased in giving only a part of his name and representing himself as twenty-one years of age, white, and that he was a regularly licensed chauffeur of the city of New Orleans, amounted to fraud, because defendant did not rely upon these representations in employing deceased, but upon the fact that he successfully stood the tests of defendant's "drivers' school."

It further appears that defendant provided transportation for the deceased to and from his work during the first few days of his employment. It was apparent to those who brought the deceased to and from his home that he lived in a negro neighborhood with negro people. Defendant's employing officer admits he noticed deceased's swarthy complexion. All the false statements made by deceased could have been easily discovered by the slightest investigation on the part of defendant. The misrepresentations were not responsible for the accident, and therefore defendant has not suffered any damage or disadvantage as a result of any of the alleged false statements made by deceased. In any event, and conceding that the de-

ceased was guilty of fraud, the contract of employment was not null and void, but only voidable, at the option of the employer. Fraud renders a contract voidable at the option of the party deceived, but not null and void. Article 1881, R. C. C., reads as follows:

"Engagements made through error, violence, fraud or menace, are not absolutely null, but are voidable by the parties, who have contracted under the influence of such error, fraud, violence or menace, or by the representatives of such parties."

Article 1882, R. C. C., reads as follows:

"They may be avoided either by exception to suits brought on such contracts, or by an action brought for that purpose."

See, also, article 1847, R. C. C.

In the case of Kenny vs. Union Ry., 166 App. Div. 497, 152 N. Y. S. 117, 8 N. C. C. A. 986, the Supreme Court of New York said:

"A street railway conductor sustained accidental injuries resulting in his death. His widow claimed compensation under the Workmen's Compensation Act * * * and an award was made in her favor. The railway company contested its liability on the ground that the relation of employer and employee did not exist between the company and the deceased at the time of the accident, because of the fact decedent had obtained employment under a false and fraudulent statement" in violation of a penal statute of the State of New York.

In the course of its opinion, the court held:

"That the deceased was an employee within the provisions of the act, the operation of an electric street railway being a hazardous employment, and the enforcement of the act was not dependent upon the validity of the contract of employment. "While the relation of employer and employee as defined by the workmen's compensation act must have existed at the time of the injury, it matters not whether the employment was under a valid contract as to both parties or under a contract voidable at the election of the employer. "The workmen's compensation act is not dependent for its enforcement upon the validity of the contract of employment, the plain purpose of the act being to provide compensation for accidental injuries to employees within the provisions specified in the act."

In the case of Hart vs. N. Y. C. & H. R. R., 205 N. Y. 317, 98 N. E. 493, the defendant urged the same defense as is urged in the instant case:

"It was contended (in this case) the deceased misrepresented his age at the time he contracted with the defendant for his employment. The appellant proposed to show that, in the written application made by him, he falsely misrepresented that he was 21 years of age, and having obtained his position by false misrepresentation— that his rights were only those of a licensee."

The Supreme Court of New York, in the course of its opinion, held:

"The trial court committed no error in excluding the evidence, as constituting no defense. The misrepresentation of the deceased affected the contract of employment in the sense it made it voidable, but did not affect the relation of master and servant. * * * Notwithstanding the deceased by his misrepresentation evaded the rule of the defendant forbidding the employment of minors, he was actually in its sevice, and, therefore, entitled to the protection of an employee accorded by law."

Our Supreme Court, in the very recent case of Byas vs. Hotel Bentley, 157 La. 1033, 103 So. 303, took cognizance of the fact that the "New York compensation statute is similar to the Louisiana law," and, in arriving at a decision in that case cited with approval a decision of the Court of Appeals of the state of New York.

In the case of Galveston, H. & S. Ry. Co. vs. Harris, 48 Tex. Civ. App. 434, 107 S. W. 108, it was held that the fact that a brakeman falsely stated, in securing his position, that he had never had any litigation with the railroad company, while a ground for rescission of his contract, did not render such contract absolutely void, or terminate the relation of master and servant existing at the time of the injury.

In the case of Lupher vs. Atchison, T. & S. F. R. Co., 81 Kan. 585, 106 P. 284, 25 L. R. A. (N. S.) 707, the Supreme Court of Kansas held (syllabus):

"The fact that a brakeman obtained his position by falsely stating that he was of full age when he was in fact but eighteen years old, a rule of the company forbidding the employment of minors in that capacity does not relieve the company from its obligation to exercise the same care for his protection that is due to any other employee, or disentitle him to recover for an injury due to the want of such care, and not occasioned by his minority or immaturity."

The court said:

"* * * Putting it as strongly as counsel for the company can put it, that he falsely represented his age to the company, * * * we still think that, while he was in the actual service of the railroad company, he was entitled to the protection of an employee. The fact that he had misrepresented his age, and the further fact that he was a minor, did not make the contract for service void, but voidable. The railroad company, having been deceived, on the other hand, could terminate it whenever it discovered the deception but, until one party or the other put an end to the relations, the contract continued to exist."

In the case of Payne, Agent, vs. Daugherty (C. C. A.) 283 F. 353, the plaintiff sued the defendant to recover damages for personal injuries alleged to have been sustained while he was employed as a switchman by falling because of a defective hand hold on the ladder of a car moving in interstate commerce from the railroad yards at Allison, Neb. Defendant denied liability, alleging that plaintiff obtained his position by fraudulently misrepresenting his former employment and concealing prior injuries and physical condition, that he was a victim of epilepsy, to which the fall was attributed in whole or in part. The court held (syllabus):

"In an action under the federal Employers' Liability Law (Comp. St. secs. 8657-8665 (45 USCA secs. 51-59)), based on fault under the Safety Appliance Acts (Comp. St. secs. 8605-8615 (45 USCA secs. 1-10)) the defense that plaintiff procured his employment by fraudulent misrepresentations as to his former employment and prior injuries is not available, in view of the terms of sections 1 and 5 of the former act."

The court said:

"That is far different from permitting a retroactive dissolution of the relation of master and servant, by virtue of the contract, which, even if voidable, was, while it subsisted, attended with the duty, required by law, for the safety of the latter. Cases are cited involving different facts, but of contrary import in principle. We regard the decisions such as Lupher v. Atchison, T. & S. F. Ry. Co., 81 Kan. 585, 106 P. 284, 25 L. R. A. (N. S.) 707, as declaring the sound and just rule, namely, that there is liability to the employee, notwithstanding the inducement to the contract."

The weight of this decision, which was rendered during October, 1922, is doubtful, in view of the holding by the United States Supreme Court in the case of Minneapolis, St. P. & S. S. M. Ry. Co. v. Rock, 279 U. S. 410, 49 S. Ct. 363, 73 L. Ed. 766, decided in 1929, and hereinafter discussed.

The following authorities hold that,

where employment is secured by misrepresentation and fraud which is not the cause of the injury, the contract is voidable and not void, and therefore the relation of employer and employee exists, and the Compensation Law is applicable: St. Louis & S. F. R. Co. vs. Brantley, 168 Ala. 579, 53 So. 305; Matlock vs. Williamsville, G. & S. T. L. R. Co., 198 Mo. 495, 95 S. W. 849, 115 Am. St. Rep. 481; McDermott vs. Iowa Falls & S. C. Ry. Co. (Iowa) 47 N. W. 1037; L. S. & M. S. Ry. Co. vs. Baldwin, 19 Ohio Cir. Ct. R. 338; Kirkham vs. Wheeler-Osgood Co., 39 Wash. 415, 81 P. 869, 4 Ann. Cas. 532; Stafford vs. B. & O. R. R. Co., 262 F. 807 (D. C. W. Va.). See, also, an interesting article on this subject in Tulane Law Review, volume IV, No. 1, issued December, 1929, p. 131. The above-cited cases seem to be the weight of authority.

The Supreme Court of the United States in the case of Cudahy Packing Co. of Nebr. vs. Mary Ann Parramore, 263 U. S. 418, 44 S. Ct. 153, 154, 68 L. Ed. 366, 30 A. L. R. 532, refers to workmen's compensation as a "status"; the court saying:

"Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits.

"The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured.

"And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say that it is enough if there be a casual connection between the injury and the business in which he employs the latter—a connection substantially contributory though it need not be the sole or proximate cause."

The Supreme Court of Louisiana, in another recent case, Clark vs. Alexandria Cooperage Co., 157 La. 138, 102 So. 96, 97, stated:

"It is our conception of the law that in the application of the Employers' Liability Act the rule is that all technical defenses are abrogated. We recognize that there are exceptions to this rule, but it must be an extreme case to bring it within the exceptions. Lemieux v. Cousins, 154 La. 811, 98 So. 255; Dyer v. Rapides Lumber Co., 154 La. 1091, 98 So. 677; Dick v. Gravel Logging Co., 152 La. 994, 95 So. 99; Philps v. Guy Drilling Co., 143 La. 951, 79 So. 549. * * *

"In cases coming under the Employers' Liability Act, the court is not bound by any technical or formal rules of procedure, except as is provided in the act itself."

A review of decisions with respect to injuries arising out of and in the course of an employee's employment is contained in the case of Dyer vs. Rapides Lumber Co., 154 La. 1091, 98 So. 677, 678, in which the court stated:

"We think the Court of Appeal has placed too narrow a construction on the terms of the statute requiring that the accident should arise out of the employment. In the leading case on that subject in this jurisdiction, Myers v. L. R. & N. Co., 140 La. 937, 74 So. 256, Mr. Justice Provosty made a careful review of many cases dealing with the question what accidents might be said to arise out of the employment, most of which are collected in the exhaustive note in L. R. A. 1916A, p. 41 etc., from which he deduced the rule mentioned by the Court of Appeal, to-wit:

" 'The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the em-

ployment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment.' "

And the court further stated:

"And it is a mistake to suppose, as some might, that the Workmen's Compensation Act is a statute intended merely to abolish all the usual defenses to actions by employees against their employers under former laws. On the contrary, the statute is essentially intended to provide insurance for the employee against all the risks to which he may be exposed by his employment."

We will now discuss the authorities that appear to be in conflict with the above authorities.

In the case of Minneapolis, St. Paul & S. S. M. Ry. Co. vs. Rock, 279 U. S. 410, 49 S. Ct. 363, 365, 73 L. Ed. 766, the respondent, Joe Rock, made application with the defendant for employment as a switchman. He was referred to the company's physician for physical examination and his application was rejected, because of his physical condition in having been operated upon for appendicitis and ulcers of the stomach and at the time suffering from rupture. A few days later he made another application in the name of John Rock, and had one Leonard to impersonate him in taking the physical examination. The physician found Leonard's condition satisfactory, and reported favorably upon the application. Petitioner employed Joe Rock based upon the fraudulent application, but the fraud was not discovered until December 24, 1924, the date that the respondent was injured. The court held:

"Respondent's position as employee is essential to his right to recover under the act. He in fact performed the work of a switchman for petitioner, but he was not of right its employee, within the meaning of the act. He obtained and held his place through fraudulent means. While his physical condition was not a cause of his injuries, it did have direct relation to the propriety of admitting him to such employment. It was at all times his duty to disclose his identity and physical condition to petitioner. His failure so to do was a continuing wrong in the nature of a cheat. The misrepresentation and injury may not be regarded as unrelated contemporary facts. As a result of his concealment his status was at all times wrongful, a fraud upon the petitioner, and a peril to its patrons and its other employees. Right to recover may not justly or reasonably be rested on a foundation so abhorrent to public policy. N. Y. C. R. Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Great Northern Ry. Co. v. Wiles, 240 U. S. 444, 448, 36 S. Ct. 406, 60 L. Ed. 732; Stafford v. Baltimore & Ohio R. R. Co. (D. C.) 262 F. 807.

"We need not consider any other question.

"Judgment reversed."

See, also, Norfolk & W. R. Co. vs. Bondurant, 107 Va. 515, 59 S. E. 1091, 15 L. R. A. (N. S.) 443, 122 Am. St. Rep. 867; Fitzmaurice vs. N. Y., N. H. & H. R. Co., 192 Mass. 159, 78 N. E. 418, 6 L. R. A. (N S.) 1146, 116 Am. St. Rep. 236, 7 Ann. Cas. 586.

The Rock case just quoted from is unquestionably pertinent to the issues raised here, and in principle is difficult to distinguish from the New York and other cases cited, supra, where it was held that the contract of employment was voidable and not void, and that the Compensation Act applied. However, the case may be distinguished from the New York and other cases cited supra on the following grounds:

First. The court in the Rock case was dealing with the Federal Employers' Liability Act, which applies to employees engaged in interstate commerce.

Second. The respondent there was employed by a railway company engaged in interstate commerce, which is subject to federal legislation, i. e., Employers' Liability Act and Safety Appliance Act, designed for the protection of interstate commerce as well as those employed therein and the safety of those using railroads as passengers; the carrier being held to a high degree of care for the protection and safe carriage of merchandise and passengers. Under the law and regulations of the Interstate Commerce Commission, a common carrier cannot stipulate that it will not be liable where its employees are negligent in respect to duties essential to their public calling. The railroad company's rule required a physical examination as a condition precedent to the employment of its employees for the very purpose of carrying out the public policy announced by the acts of Congress and the regulations of the Interstate Commerce Commission. The fraud practiced by the respondent was in the very teeth of these laws and regulations.

Third. Rock substituted for his own physical body, which had been rejected, the body of Leonard, which was accepted as physically fit by the physician for the company, and thus, by this deception, imposed the services of a physically unfit man upon the company in the place of the physically fit man it had accepted. In the case before us defendant got the very person it intended to employ.

Fourth. In the instant case the parents of deceased are asking for compensation, and in the Rock case the injured employee was seeking relief.

Now, assuming that the cases are in conflict, we prefer to follow the line of cases holding that the contract of employment is voidable—not void—at the option of the employer, and that the Compensation Law is applicable. This is in keeping with the law of this state on the question of fraud in reference to contracts; i. e., they are voidable and not null and void. Articles 1847, 1881, 1882, R. C. C. The New York Compensation Law is similar to ours. The problem of safely handling interstate commerce and the abuses which required federal legislation to correct them do not obtain here.

The Supreme Court of the United States does not discuss the question of fraud rendering a contract only voidable, or the authorities to that effect, and its decision is not a liberal interpretation of Compensation Law, but a strict one. The weight of authority is to the effect that the contract of employment is voidable—not void—and that the Compensation Law is applicable.

In the light of the foregoing authorities, the defense that fraud and misrepresentation vitiated and rendered the contract of employment null and void, so as to defeat the dependent's rights under the compensation act, is not well founded. We hold that the contract of employment was voidable at the option of the employer, and therefore the Compensation Law is applicable here.

(9) As to the question of dependency, we find the evidence shows that plaintiffs, the parents of the deceased, were partially dependent upon him for support. It appears that the plaintiffs are the parents of a large family; that the father suffers from a chronic sickness, and works as a redcap at the Union Station for small wages and tips; that the mother had taken in sewing about a year before the son's death, but, due to failing eyesight, had to discontinue. There is evidence in the record to show that deceased earned $3.25 to $3.50 per day, according to the work that

he was doing. The defendant's evidence establishes the fact that the deceased earned $18.82, based upon a commission of 30 per cent. of the fares he collected, less the gasoline bill, from the period December 17 through December 22, 1926. It further appears that deceased contributed eight, ten, twelve, fourteen, eighteen, or twenty dollars a week during the two years preceding his death, according to the employment and wages that he received. The evidence convinces us that the deceased earned an average of $18 per week during the year preceding his death, and contributed $12 per week during the course of that year to the support of his parents, who were partially dependent upon him for support. If they were wholly dependent upon him for support, they would be entitled to 65 per cent. of $18 or $11.70 per week. However, since they were only partially dependent upon him for support, the weekly compensation to be paid as aforesaid "shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident." See subparagraph 2 of paragraph 18 of section 8 of Act 85 of 1926. Therefore plaintiffs, as partial dependents, would be entitled to two-thirds of $11.70, or $7.80 compensation per week for a period of three hundred weeks. Deceased having been killed on December 23, 1926, the first installment of compensation should have been paid on December 30, 1926, the first week not being counted.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of Mrs. Cecelia Plick, wife of Frank A. Adams, and Frank A. Adams, plaintiffs herein, and against Toye Bros. Auto & Taxicab Company, Inc., defendant herein, in the sum of $7.80 per week, for three hundred weeks, beginning December 30, 1926, with interest upon each installment thereof from its due date at the rate of 5 per cent. per annum, until paid, and also the sum of $150 for funeral expenses; appellee to pay all costs.

JANVIER, J. (dissenting). I understand from the majority opinion that my associates feel that the decision of the Supreme Court of the United States in Minneapolis, St. P. & S. S. M. Ry. Co. vs. Rock, 279 U. S. 410, 49 S. Ct. 363, 365, 73 L. Ed. 766, and the opinion in Kenny vs. Union Ry. Co., 166 App. Div. 497, 152 N. Y. S. 117, cannot be reconciled, and in this I agree with them. But I cannot agree that the reasoning which led to the decision in the New York case is more sound than that advanced by Mr. Justice Pierce Butler of the Supreme Court of the United States in the Rock case.

In order to recover under the Workmen's Compensation Laws of Louisiana (Act No. 20 of 1914, as amended) the claimant must show that there was an employment. There must be an employer and an employee, otherwise the Compensation Laws are not applicable.

As the Supreme Court of the United States said in the Rock case, supra, "respondent's position as employee is essential to his right to recover under the act."

It has been held several times in this state that recovery in compensation is not based on tort liability, but on contractual obligation. Legendre vs. Barker, 5 La. App. 619; Burson vs. Ohio Oil Co., 6 La.

App. 739. There can be no contractual obligation unless there is a contract, either written or verbal. There can be no contract where one of the parties procures from the other, through fraud, a consent which, except for the fraud could not possibly have been obtained.

Here the so-called "employer" would not have engaged the so-called "employee" if there had not been fraudulent deception in all four of the following particulars: (1) As to race or color of Adams, the employee; (2) as to his age; (3) as to his possession of a chauffeur's badge or license; (4) as to his name.

In the Rock case the employee substituted a certificate of physical examination of another person; here the employee substituted a chauffeur's badge or license of another person. I cannot follow my associates in their reasoning that there is a distinction on this point.

It will not do to say that the defendant did not rely on that badge or certificate and made an examination of its own. It must be conceded that the city ordinance and the defendant's rule requiring that a badge or certificate be produced, were adopted for some good purpose. We cannot assume that an employer of labor, having adopted apparently reasonable regulations, has done so for other than good, sound business reasons. It is fair to assume that, when Adams appeared and stated that he was licensed by the city of New Orleans as a chauffeur, defendant relied to some extent on his declaration in this regard and on his production of a chauffeur's badge. In the decision in the Rock case the Supreme Court of the United States stated that it was of no importance that the accident did not result from the fraudulent deception. The same reasoning applies here, except that here,

as we have already held in Plick, Wife of Adams, et al. vs. Anthony Tusa et al., 11 La. App. 106, 124 So. 678, the negligence of Adams himself contributed to the accident, and thus the cause cannot be said to be dissociated from the fraud; that is, Adams fraudulently persuaded defendant that he was a careful chauffeur, and he did this by producing a chauffeur's badge, whereas, in fact, the cause of the accident was his own carelessness. In my opinion the facts in this case bring it squarely within the doctrine announced by the Supreme Court of the United States in the Rock case, wherein we find the following:

"Respondent's position as employee is essential to his right to recover under the act. He in fact performed the work of a switchman for petitioner, but he was not of right its employe, within the meaning of the act. He obtained and held his place through fraudulent means. While his physical condition was not a cause of his injuries, it did have direct relation to the propriety of admitting him to such employment. It was at all times his duty to disclose his identity and physical condition to petitioner. His failure so to do was a continuing wrong in the nature of a cheat. The misrepresentation and injury may not be regarded as unrelated contemporary facts. As a result of his concealment his status was at all times wrongful, a fraud upon the petitioner, and a peril to its patrons and its other employees. Right to recover may not justly or reasonably be rested on a foundation so abhorrent to public policy."

The majority opinion cites several cases as authority for the proposition that fraud in obtaining employment does not prevent recovery by the employee as such.

In practically all of these cases the only fraudulent misrepresentation was with regard to the age of the applicant for the position. It is evident that, in all such cases, the applicant was apparently at least twenty-one years old, for otherwise the

misrepresentation could not have been relied on. It is also clear that a mis-statement as to age in such a case is of no material importance.

I quite agree with Mr. Justice Sayre in the statement made by him in St. Louis & S. F. R. Co. vs. Brantley, 168 Ala. 579, 53 So. 305, 306:

"I would not, however, be understood as declaring that every misrepresentation made by one applying to an employer for employment so vitiates the ensuing contract as to deprive the employee of the benefit of the statute. To have that effect the misrepresentation must be material to the contract, must be made with the intent to defraud, and must deceive."

It strikes me that the misrepresentations made in the case we are now considering were material, were made with the intent to defraud, and did deceive. The defendant had no intention at any time of employing a negro. It no doubt realized that the employment of negroes would create disturbances and disputes with the other employees. If such disturbances or disputes had resulted in violence, then respondent would have been liable, for, under the doctrine announced by our Supreme Court in Ferguson vs. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248, 249, a master is liable in compensation to an employee injured by a fellow employee as the result of a personal grudge. On this point the court said:

"An employee, like the decedent, who may have an enemy among his fellow employees in the same gang in which he is required to work, necessarily comes in contact with such enemy throughout all hours of the day, and is constantly exposed to assault and bodily harm. He therefore incurs greater risk necessitated by his employment than a person ordinarily would be subjected to outside of such employment."

Furthermore, how can it be said that the misrepresentation as to the ownership of a chauffeur's badge was of no material importance. The employer had an absolute right to rely on the fact that such a badge meant that the employee was certified by the city to be a competent chauffeur.

The misrepresentation as to the name was also of material importance, because it was made for the purpose of preventing the employer from discovering the fact that the applicant was a negro. The applicant knew, and his parents knew, that if his correct name was given, and if his residence was given, there would be grave danger of the employer discovering that he was colored and not white.

I shall briefly refer to the cases cited in the majority opinion in an endeavor to show that in each of them the misrepresentation was in regard to matters of small importance.

In Hart vs. N. Y. C. & H. R. R., 205 N. Y. 317, 98 N. E. 493, the only misrepresentation was as to age. A boy apparently of mature age stated that he was over twenty-one, and thus obtained employment in violation of a rule of the company.

In Galveston, H. & S. Ry. Co. vs. Harris, 48 Tex. Civ. App. 434, 107 S. W. 108, the applicant stated that he had never had litigation against a railroad company. This statement was untrue, and violated a rule of the company that it would not employ any one who had had previous litigation against a railroad. Surely such a misrepresentation was not material.

In Lupher vs. Atchison, T. & S. F. R. Co., 81 Kan. 585, 106 P. 284, 25 L. R. A. (N. S.) 707, the misrepresentation was solely as to age.

In St. Louis & S. F. R. Co. vs. Brantley, 168 Ala. 579, 53 So. 305, the misrepresentation was solely as to age, but the case was remanded on other points. The majority of the court stated that the misrepresentation would not deprive the claimant of the right to recover, "unless the immaturity immediately contributed to the injury." The immaturity referred to was lack of age on the part of the claimant.

In McDermott vs. Iowa Falls & S. C. Ry. Co. (Iowa) 47 N. W. 1037, the court held that the jury should consider whether the misrepresentation as to age was material.

In Matlock vs. Williamsville, G. & St. L. R. Co., 198 Mo. 495, 95 S. W. 849, 115 Am. St. Rep. 481, the misrepresentation was solely as to age, but I do not consider this case at all in point, because the court held that the situation was such that, regardless of the employment or of the age, the negligence shown would have rendered the defendant liable.

My associates in the majority opinion cite Stafford vs. B. & O. R. R. Co., 262 F. 807, 811 (D. C. W. Va.). As I read this decision, it is squarely in line with the decision of the Supreme Court of the United States in the Rock case, supra, but, if I am mistaken in my interpretation of it, then, as the facts involved are identical with those discussed in the Rock case, it is overruled by the decision of the Supreme Court of the United States.

In Payne, Agent, vs. Daugherty (C. C. A.) 283 F. 353, I find that the misrepresentation was merely as to the physical condition of the applicant, and I think that this case is also distinguishable on the ground that, although it was brought under the Employers' Liability Act, the court stated that it really resulted from a violation of the Safety Appliance Act. Furthermore, it seems to me to be directly in conflict with the doctrine announced in the Rock case.

It is said that a contract procured by fraud is merely voidable and not void "ab initio." There is no doubt that this statement is correct as a general proposition, but, as applied to this case, it overlooks the essential fact that the right to annul a contract because of facts not known is in fact no right at all until discovery of the facts. Conceding that the defendant could have annulled the contract on showing the true facts, it so happens in this case that it did not know them, and its lack of knowledge resulted solely from the fraud. It did not know the true facts until after the accident, which terminated the contract and which brought into existence the right now sued on, if that right exists at all. Of course, if the defendant had discovered the deception, and had, after such discovery, retained the employee, an entirely different case would have been presented. The words in bold type in the following quotation from the syllabus of the Rock case are, on this point significant:

"One who obtains a job as switchman by fraudulently evading the company's rule for physical examination, and who is injured in the course of his employment **while the company remains unaware of the deception**, is not of right an employee. * * *"

I am not prepared to say that any fraud would, in my judgment, be sufficient to annul a contract of employment and to render inapplicable to such a contract the Workmen's Compensation Laws of this state, but I believe that here, where we have four distinct fraudulent acts, and where it is conceded that the employment would not have come into existence but

for the deception in all four particulars, it would be monstrous to allow a recovery which, as I have already stated, can only result from a contract of employment, where that contract of employment was brought into existence solely and entirely as a result of a deception, a fraud, and a cheat. Then, too, I cannot lose sight of the fact that it is not the minor employee who is now before us seeking recovery, but that the parents are the plaintiffs, and that they, in a large measure, assisted in the perpetration of the fraud. As I read the record, it was the mother, one of the plaintiffs now before us, who, in effect, stole from the clothing of another chauffeur the badge which her son used, and thus we find that the parents, plaintiffs now before us, are seeking to benefit as the result of their own fraud and deception. The evidence given by Mrs. Adams shows beyond peradventure that she was not ignorant of the deception. She seems to be a woman of remarkable intelligence and with keen appreciation of the legal effect of the various facts connected with the deception practiced.

The danger which would result from the violation of the reasonable rules of defendant cannot be lost sight of. The general public is interested as well as the patrons of defendant company, and, for this reason, public policy requires that contracts of this kind be not induced by fraud and that reasonable rules and regulations be not set at naught by fraudulent misrepresentations such as were made in this case. As was said in Stafford vs. B. & O. R. R. Co., supra:

"The force of the moral side of the question bears strongly, too, in the same direction. Railroad brakemen fill very responsible places in railroad operation. Not only the corporation, but the public also, are vitally interested in his physical and other ability to protect both lives and property from destruction."

But I do not flatter myself that I can state the proposition that employment secured through fraud is no employment at all more succinctly, nor more forcibly than has been done by the Supreme Court of the United States in the Rock case, to which I have referred, and I rest my view squarely on that opinion.

I, therefore, respectfully dissent.