**FORD v. CITY OF ALEXANDRIA et al.**
No. 4769.

Court of Appeal of Louisiana.
Second Circuit.
June 4, 1934.

For former opinion, see 151 So. 777.

Polk & Robinson, of Alexandria, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellees.

DREW, Judge.

Mrs. Lurry Ford, appearing for the benefit of herself and her two minor children, instituted this suit for compensation for the death of her husband, who was an employee of the city of Alexandria. The lower court rejected her demands and this court affirmed the judgment. A rehearing was granted and the case is now before us on rehearing.

The facts are few and entirely undisputed. They are as follows:

Deceased was in the employ of the defendant at a salary of $5 per day for six days per week, in the street department. His foreman described his duties as follows: "Well, the principal thing was he ran the sweeping machine, but he done a little of everything; the upkeep of the machine, and also when we would have a storm or anything, and he kept it up and also helped clean the streets and other things that it was necessary to do." He was under the instructions of his foreman, as described by the commissioner of streets and parks, as follows: "They are under instructions of the Superintendent and the foreman, and his men where they find a hazardous condition, even when they are on duty or whether they are off duty, to take such steps they think proper to safeguard the public from the danger of being killed or hurt." And as described by the superintendent of streets as follows: "Well, he didn't have orders that particular night, but it is always understood where we have those conditions if he is out and sees anything to be taken care of for the safety of the people and the public, he is supposed to look after it."

Deceased's hours of employment on the night he met his death were from 11 p. m. to 5 a. m., and his principal duty at that time was to operate the street sweeper. During this night there came a heavy rain and electric storm. The rain was so heavy that it was impossible to operate the sweeper, and about 3 a. m. he put the sweeping machine up and got in his car and was proceeding in the direction of his home. Whether he was going home or was patrolling the streets to see if there were any hazards, no one knows. It is of no material interest which he was do-

ing, for if he had ceased his work and started home, he re-entered his employment just prior to his death in following his general instructions. When he arrived at the corner of Lee and Vance streets, he ran his car into and under a live wire which was hanging from a pole and extending out into the middle of the street. He stopped his car with the wire lying across the back part of the top, the live end of the wire being about the middle of the street. He left the motor running and went into a filling station where he asked for a broom, which he received. After explaining to the filling station operator about the live wire and requesting that he call the barn and notify the electrician, he went out toward his car with the broom. After the filling station operator telephoned his request, he went out front again and found deceased lying with his feet about two feet from the running board of the car and his head out in the street. The broom was clasped in his hand and the live wire was lying across his breast. The wire was still across the top of his car, the motor of the car was still running, and the top of the car was smoking. It was at that time still raining.

■ It is admitted that it was his duty, under his employment, when he discovered the live wire, to stop and telephone the city electrician and remain there to safeguard the public from running into the wire. He was therefore certainly killed while in the course of his employment. He had been instructed not to touch a live wire, but to call the electrician and guard the public against running into the wire until the electrician's arrival, and for that reason defendant contends, without any proof of same, that deceased attempted to remove the wire from his car with the broom, therefore, violating his instructions; further, that his purpose in removing the wire from his car was to save his personal property and not in the interest of the city; that it was a turning aside from his employment, and, therefore, the accident did not arise out of his employment.

We adopted this contention of defendant in our original opinion, but we were in error in doing so, for, after a very careful study of the record, we find no positive evidence which would justify such a holding and, it being a special defense, it was incumbent upon defendant to prove this fact by positive testimony. Plick v. Toye Bros. Auto & Taxicab Co., 13 La. App. 525, 127 So. 59.

■ How deceased came into contact with the wire will never be known. It was necessarily a dark night because of the rain. It is possible that he walked into the wire, or that it was blown against him. He could have slipped and fallen into the wire. There are many other ways he may have come in contact with the wire other than by trying to remove it from the car with the broom. We would not be justified in assuming that he came in contact with the wire while performing an act solely in his own interest, without some proof to that effect. If it was his intention to remove the wire from his car with the broomstick, which he thought a non-conductor and which is when not wet, it was no doubt also intended to remove the wire from the street so that no other person would run into it as he had done, which would have been an act in the interest of the city; and if he was performing an act in the interest of the city, although contrary to instructions, due to the peculiar hazards that existed, he would be entitled to compensation. There is no positive evidence to show that deceased was performing an act entirely for his own interest at the time of his death. The burden of proof was upon defendant to prove this special defense. Plick v. Toye Bros., supra.

Therefore, the case evolves itself into this fact:

Deceased was at a place where his employment called for him to be and, so far as the evidence goes, performing the duty he was employed to perform, and was accidentally killed, and, without assuming a state of facts not proved, we are forced to find that the accident arose out of his employment and in the course of his employment. The live wire extended to the center of the street. It was raining and no doubt would have been a difficult job for the deceased, who is not shown to have had a light of any kind, to stop any traffic which might have passed there; and if we should assume as a fact that he attempted to remove the wire, we could as well assume that he was attempting to remove it from the street for that reason, as well as to save his own car.

An extremely dangerous hazard existed with a live wire lying out in the middle of the street and if the deceased, if he did attempt to remove the hazard (thinking he could safely do so), had not attempted to remove it, although violating instructions, he would have been criminally negligent if some one or more persons had been killed by said wire.

Plaintiffs are entitled to judgment, as prayed for. We therefore recall and set aside the former judgment of this court.

The judgment of the lower court is now reversed, and there is judgment for plaintiff's

Mrs. Lurry Ford for the common benefit of herself and her minor children, Bettie Jean Ford and Anna Louise Ford, and against the city of Alexandria and the United States Fidelity .& Guaranty Company, individually and in solido, in the sum of $19.50 per week for a period of 300 weeks, beginning on June 10, 1933, with legal interest on each past-due payment; and for the further sum of $100 for burial expenses; and all costs.